Appellant Roy J. Trissel appeals a judgment of the Stark County Common Pleas Court convicting him of Conspiracy to Commit Aggravated Murder (R.C. 2903.01(A)):
ASSIGNMENTS OF ERROR:
 I. THE FAILURE OF THE COURT TO SEVER THE SEPARATE CHARGES INTO TWO SEPARATE TRIALS VIOLATED THE OHIO RULES OF CRIMINAL PROCEDURE RULE 14 AND THE APPELLANT'S RIGHT TO DUE PROCESS AS FOUND IN THE OHIO AND UNITED STATES CONSTITUTION.
 II. THE JURY'S DETERMINATION THAT THE APPELLANT WAS GUILTY OF CONSPIRING TO COMMIT AGGRAVATED MURDER FROM ON OR ABOUT THE FIRST DAY OF MARCH, 1997 TO THE TWELFTH DAY OF DECEMBER, 1997, IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
 III. THE JURY'S FINDING THAT THE APPELLANT INTENTIONALLY COMMITTED AN OVERT ACT FACILITATING A CONSPIRACY IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND IS IN VIOLATION OF DUE PROCESS CLAUSE AS PROVIDED BY THE OHIO AND UNITED STATES CONSTITUTIONS.
 IV. THE MISCONDUCT OF THE STATE PROSECUTING ATTORNEY SO PREJUDICED THE JURY THAT APPELLANT WAS DENIED A FAIR TRIAL AND DUE PROCESS OF LAW UNDER THE STATE OF OHIO AND UNITED STATES CONSTITUTIONS.
In March of 1997, Tracey Couch was admitted to the Massillon Psychiatric Center following a mental breakdown. While a patient there, Couch met appellant, who was a floor nurse responsible for administering Couch's medication. During the three weeks Couch was a patient, he formed a friendship with appellant. The two men discussed their respective military experiences, and appellant's estrangement from his family.
When Couch was discharged, at the end of March, appellant told Couch that he may have a job for him in the future. Appellant did not explain at that time what kind of job he was referring to, but gave appellant his telephone number.
Appellant telephoned Couch in September of 1997. Appellant informed Couch that he was going to be arraigned concerning an allegation that he attempted to hit another individual with his automobile. Appellant was referring to a Felonious Assault charge arising from an incident on August 17, 1997, where he allegedly struck David Laher with his automobile following a verbal altercation. Ultimately, appellant was acquitted by a jury of this offense. Appellant was angry about the allegation, and told Couch that it was a lie. Appellant indicated that he wanted to meet Couch at Jasper's Bar in Strasburg.
When the pair met at the bar, appellant told Couch he would pay him to kill appellant's ex-wife and her boyfriend, Laher. Couch indicated that he would expect $50,000 if he did the job. Appellant indicated that he wanted them killed because he would lose his job if he was convicted on the pending felony charge. Appellant told Couch he would get some money from selling his van. At the end of the meeting, the men agreed that appellant would contact Couch.
In the meantime, Couch thought about his discussion with appellant. After a few days, Couch decided to contact the police. As a result, the Bureau of Criminal Investigation became involved. After meeting with Couch, investigators decided that Couch would wear a wire and tape record any future conversations with appellant.
On September 21, 1997, appellant telephoned Couch, and the two agreed to meet at Brewster's Pub in Dover. Couch went to the bar as planned, but appellant never showed up. After Couch called appellant, appellant indicated that he had to attend his daughter's basketball game. However, appellant told Couch that he had a court appearance on the Felonious Assault charge the next day, and wanted Couch to come so he could see David Laher. This conversation was tape recorded.
On October 1, 1997, Couch went to Massillon Municipal Court for appellant's appearance on the Felonious Assault charge. Couch waited outside the courtroom. Appellant approached Couch and indicated that he had just been "fucked." Appellant discretely showed Couch the court papers, and told Couch he would contact him. Couch spoke to appellant later that evening, and the two agreed to meet again at Jasper's. These conversations were tape recorded.
The next day, appellant and Couch met at Jasper's Bar. Couch asked appellant if he was serious about killing David Laher. Appellant responded that he wanted Laher whacked, and the body to disappear. Couch indicated that he wanted some money. Appellant responded he would get him the $500, but had to determine when was the best time to kill Laher. Appellant felt that if he got off with a misdemeanor and would only have to serve a few days, it would look better if Laher got whacked afterwards. If the killing happened before the disposition of his case, appellant was afraid the finger would be pointed at him. Couch asked appellant if he wanted Laher killed even if he got off with a misdemeanor. Appellant responded, "I still want him done."
Appellant and Couch spoke over the telephone on October 4, 10, and 14; November 14; and December 3, 9, 11, and 12 of 1997. During one of the conversations, Couch told appellant that he had some photographs of Laher getting rowdy in a bar. Appellant indicated that he wanted to see the photographs. The two agreed to meet at BW3's in Massillon.
On December 12, 1997, appellant and Couch met for the final time at BW3's in Massillon. Couch told appellant that he forgot the photographs. Appellant told Couch that it did not matter, and he had $150 to start off. Couch asked appellant if the money was a down payment to get Laher. Appellant indicated that the money was, in fact, a down payment for Couch to go ahead and take care of Laher. However, appellant wanted to hold off because he was worried he would be connected to the murder. Couch assured appellant he would take care of it in a manner that the authorities would not be able to trace a thing.
During the conversation, appellant and Couch discussed the method by which Laher would be killed. Couch told appellant he would make it look like an automobile accident. Appellant indicated that he did not really care how it was done, as long as he and Couch were not tied together. Couch told appellant that he would dispose of the body by driving into Pennsylvania and dumping it into the river. Appellant told Couch to, "weigh him down." When Couch asked appellant what he meant, appellant replied, "I mean, you know, so he sinks." Appellant then handed Couch $150. This final conversation was not recorded, due to failure of tape recording equipment.
Appellant was charged with Felonious Assault and Conspiracy to Commit Aggravated Murder. The case proceeded to jury trial in the Stark County Common Pleas Court. Following submission of the case to the jury, appellant was found not guilty of Felonious Assault, but guilty of Conspiracy to Commit Aggravated Murder. He was sentenced to six years incarceration.
 I.
Appellant argues the court erred in failing to sever the Felonious Assault charge from the Conspiracy to Commit Aggravated Murder charge for trial.
The court may order two or more indictments to be tried together, if the offenses or the defendants could have been joined in a single indictment. Crim.R. 13. The court may grant severance if it appears that the defendant or the State is prejudiced by joinder of offenses for a trial. Crim.R. 14. The burden is upon the criminal defendant claiming error to affirmatively demonstrate that his rights were prejudiced by joinder. State vs. Torres (1981), 66 Ohio St.2d 340. In order to reverse a trial court ruling denying severance, we must find that the trial court abused its discretion. State vs. Franklin
(1991), 62 Ohio St.3d 118, 123.
The prosecutor may counter a claim of prejudice in two ways. The first is the "other acts" test, where the State may argue that it could have introduced evidence of one offense in the trial of the other, severed offense, under the "other acts" portion of Evid.R. 404(B). Id. The second is the joinder test, where the State is merely required to show that evidence of each of the crimes joined at trial is simple and direct. Id.
Thus, an accused is not prejudiced by joinder when simple and direct evidence exists, regardless of the admissibility of evidence of other crimes pursuant to Evid.R. 404(B). Id.
In the instant case, evidence supporting the charge of Felonious Assault was simple and distinct from the evidence of the Conspiracy to Commit Aggravated Murder. The felonious assault allegation occurred several weeks before appellant contacted Couch to discuss the murder of David Laher. In fact, the indictment on Felonious Assault was the catalyst that put into motion appellant's immediate desire to murder the victim. As the evidence of the two crimes was simple and direct, the court did not abuse its discretion in denying appellant's motion to sever.
The first Assignment of Error is overruled.
 II.
In his second Assignment of Error, appellant argues that the judgment is against the manifest weight of the evidence. The indictment alleged that the crime occurred between the dates of March, 1997, and December, 1997. Appellant argues that because there is no evidence of any criminal act occurring before September of 1997, the judgment is against the manifest weight of the evidence.
When a Court of Appeals reverses the judgment of a trial court on the basis that the verdict is against the weight of the evidence, the Appellate Court sits as a thirteenth juror and disagrees with the fact finder's resolution of conflicting testimony. State vs. Thompkins (1997), 78 Ohio St.3d 380, 387. The court reviews the record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses, and determines whether in resolving conflicts in the evidence, the jury clearly lost its way. Id. The discretionary power to grant a new trial should be exercised only in the exceptional case when the evidence weighs heavily against conviction. Id.
In the instant case, there was evidence that when Couch left Massillon State Hospital in March of 1997, appellant exchanged phone numbers with him, and indicated that he may have a job for Couch to perform in the future. When appellant contacted Couch again in September, he indicated that the "job" he wanted Couch to perform was murder for hire. Therefore, there was evidence that the conspiracy, in fact, began in March.
The second Assignment of Error is overruled.
 III.
Appellant argues that the judgment is against the manifest weight of the evidence because there is no evidence to demonstrate that appellant performed an overt act in furtherance of the Conspiracy to Commit Murder. Appellant argues that he cannot be punished merely because he wanted the victim to be murdered.
R.C. 2923.01(B) provides that no person shall be convicted of conspiracy unless his substantial overt act in furtherance of the conspiracy is alleged and proved to have been done by the accused, or by a person with whom the accused conspired, subsequent to the accused's entrance into the conspiracy. The statute further provides that an overt act is substantial when it is of a character that manifests a purpose on the part of an actor that the object of the conspiracy should be completed.
Although appellant claimed that the $150 payment to Couch was for the photographs, Couch testified that the money was a down payment for the murder of David Laher. This testimony was further buttressed by evidence of earlier discussions between the parties regarding Couch's insistence on money for committing the murder. In addition, Couch did not bring the photographs with him to the meeting, yet appellant gave him themoney. At the meeting where the money was given to Couch, the pair discussed the method by which the victim would be killed, and by which the body would be disposed of. The jury's finding that appellant committed an overt act in furtherance of the conspiracy was not against the manifest weight of the evidence.
The third Assignment of Error is overruled.
 IV.
Appellant claims prosecutorial misconduct, in that the prosecutor frequently denigrated defense counsel throughout the trial, denying him of a fair trial. Appellant cites numerous transcript pages at which he claims the prosecutor objected repeatedly to defense counsel's questions, and made comments that were derogatory toward defense counsel. Appellant further argues that the court exacerbated the prejudicial effect of these objections by admonishing defense counsel for his conduct. Appellant does not specifically argue any specific instance of prosecutorial misconduct.
The test for prosecutorial misconduct is whether the conduct was improper, and prejudicially affected the substantial rights of the defendant. State vs. Lott (1990), 51 Ohio St.3d 160, 65,cert. denied, 112 L.Ed.2d 596.
Appellant failed to object to any alleged misconduct, and we, therefore, must find plain error to reverse. Plain error does not occur unless but for the error, the outcome of the trial clearly would have been otherwise. State vs. Long (1978),53 Ohio St.2d 91.
The majority of the objections which appellant claims were misconduct by the prosecutor were sustained by the trial court, due to improper questioning of witnesses by defense counsel throughout the trial. Appellant cannot demonstrate prejudice under the plain error standard from objections and comments by the prosecutor. It is not clear that absent such remarks, the outcome of the trial would have been different. The conversations between appellant and the co-conspirator were tape recorded, providing clear evidence of appellant's role in the conspiracy.
The fourth Assignment of Error is overruled.
The judgment of the Stark County Common Pleas Court is affirmed.
By: Reader, J., Gwin, P. J. and Hoffman, J. concur.
--------------------
--------------------
 -------------------- JUDGES
For the reasons stated in the Memorandum-Opinion on file, the judgment of the Stark County Common Pleas Court is affirmed. Costs to appellant.
--------------------
--------------------
 -------------------- JUDGES