OPINION
{¶ 1} Appellant Donna Wilson appeals her conviction for aggravated robbery from the Stark County Court of Common Pleas. The following facts give rise to this appeal.
 {¶ 2} On May 10, 2001, James McGraw went to an apartment building located on Cleveland Avenue in the City of Canton. McGraw, an alcoholic for twenty-five years, took beer with him and planned to meet Shif Alfa, his girlfriend's uncle. McGraw often would sit outside the front entrance to the apartment and drink beer with Alfa.
 {¶ 3} However, on this particular date, when McGraw arrived Alfa was not present and McGraw sat outside the front entrance of the apartment and drank with appellant. Appellant shared an apartment with Brant Bryant in the apartment building. McGraw knew both appellant and Bryant from previous visits to the building. While McGraw drank with appellant, Bryant eventually joined them. Some time thereafter, a resident of the apartment building, Ceil Scott, found appellant lying on the porch in a pool of blood. McGraw's head was bloody and his hair was matted. Scott called 911 and propped McGraw up against the wall in the entrance of the building.
 {¶ 4} The paramedics transported McGraw to Aultman Hospital Emergency Room. The next event McGraw remembered was awakening at the hospital. Dr. John Zimmerman cleaned the wound and observed McGraw for approximately nine hours before discharging him from the hospital. At the hospital, McGraw realized his wallet, watch, eyeglasses and a few dollars were missing from his pocket.
 {¶ 5} After his release from the hospital, McGraw's condition worsened. Subsequently, on May 16, 2001, McGraw's sister took him to the V.A. hospital in Cleveland where surgery was performed to relieve the pressure which resulted from a blood clot to the brain. Due to his head injury, McGraw has an unsteady gait and walks with a cane. Following McGraw's admittance to the V.A. hospital, Sergeant Michael Rukavina began investigating the origin of McGraw's head injuries. Rukavina developed appellant and her co-defendant, Bryant, as suspects. Bryant gave a voluntary statement to Rukavina, which conflicted with other evidence obtained in the investigation.
 {¶ 6} After the Canton Municipal Court bound over appellant's case to the Stark County Grand Jury, the grand jury indicted appellant and her co-defendant each with one count of complicity to aggravated robbery. Appellant entered a plea of not guilty at her arraignment. This matter proceeded to trial on August 27, 2001. Following deliberations, the jury found appellant guilty. The trial court sentenced appellant and Co-defendant Bryant each to seven year determinate prison terms.
 {¶ 7} Appellant timely filed a notice of appeal and sets forth the following assignments of error for our consideration:
 {¶ 8} "I. APPELLANT WAS DENIED A FAIR TRIAL IN VIOLATION OF THE UNITED STATES AND OHIO CONSTITUTIONS DUE TO THE INEFFECTIVE REPRESENTATION OF TRIAL COUNSEL.
 {¶ 9} "II. THE TRIAL COURT COMMITTED PREJUDICIAL ERROR AND DEPRIVED APPELLANT OF DUE PROCESS OF LAW GUARANTEED BY THE UNITED STATES AND OHIO CONSTITUTIONS BY FINDING APPELLANT GUILTY OF AGGRAVATED ROBBERY, AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE, WHERE THE STATE FAILED TO OFFER SUFFICIENT EVIDENCE TO PROVE EACH AND EVERY ELEMENT OF THE CHARGED OFFENSES (SIC) BEYOND A REASONABLE DOUBT."
 I {¶ 10} In her first assignment of error, appellant claims she was denied effective assistance of counsel for two reasons. First, appellant contends defense counsel failed to object and stop Dr. McQuarrie from testifying as to his personal belief regarding McGraw's subsequent statements to hospital personnel that he had been hit on the head. Second, appellant maintains that defense counsel should have objected to Sergeant Rukavina's testimony about her co-defendant's statement. We will address appellant's second argument first as we find it dispositive of this matter on appeal.
 {¶ 11} A claim of ineffective assistance of counsel requires a two-prong analysis. The first inquiry is whether counsel's performance fell below an objective standard of reasonable representation involving a substantial violation of any of defense counsel's essential duties to appellant. The second prong is whether the appellant was prejudiced by counsel's ineffectiveness. Strickland v. Washington (1984), 466 U.S. 668;State v. Bradley (1989), 42 Ohio St.3d 136.
 {¶ 12} In determining whether counsel's representation fell below an objective standard of reasonableness, judicial scrutiny of counsel's performance must be highly deferential. Bradley at 42. Because of the difficulties inherent in determining whether effective assistance of counsel was rendered in any given case, a strong presumption exists counsel's conduct fell within the wide range of reasonable, professional assistance. Id.
 {¶ 13} In order to warrant a reversal, the appellant must additionally show he was prejudiced by counsel's ineffectiveness. "Prejudice from defective representation sufficient to justify reversal of a conviction exists only where the result of the trial was unreliable or the proceeding fundamentally unfair because of the performance of trial counsel." State v. Carter, 72 Ohio St.3d 545, 558, 1995-Ohio-104, citing Lockhart v. Fretwell (1993), 506 U.S. 365, 370.
 {¶ 14} The United States Supreme Court and the Ohio Supreme Court have held a reviewing court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." Bradley at 143, quoting Strickland at 697. It is based upon this standard that we review appellant's first assignment of error.
 {¶ 15} Appellant maintains, in her second argument, that defense counsel should have objected to Sergeant Rukavina's testimony about her co-defendant's statement. Appellant makes this argument pursuant toBruton v. United States (1968), 391 U.S. 123. In Bruton, co-defendants Evans and Bruton were tried jointly on federal charges of armed postal robbery. Id. at 124. At trial, a postal inspector testified that Evans orally confessed to him that Evans and Appellant Bruton committed the armed robbery. Id. Evans did not testify at trial. The trial court instructed the jury that the confession was admissible only against Evans and could not be considered in determining the guilt or innocence of Bruton because the confession was inadmissible hearsay. Id. at 125.
 {¶ 16} On appeal, the United States Supreme Court reversed Bruton's conviction, holding that the admission of Evan's confession in the joint trial violated Bruton's right of cross-examination secured by the Confrontation Clause of the Sixth Amendment. Id. at 126. The Court explained that, despite the clear instructions to the jury to disregard Evans' inadmissible hearsay evidence inculpating Bruton, said instruction was not an adequate substitute for Bruton's constitutional right of cross-examination. Id. at 137. "The effect is the same as if there had been no instruction at all." Id.
 {¶ 17} We believe Bruton applies to the case sub judice. At trial, Detective Rukavina testified, as follows, concerning Co-Defendant Bryant's statement:
 {¶ 18} "A. He [Bryant] indicated that, * * *, that he, * * *, was at the, at the area in question with Mr. McGraw, along with Donna Wilson. He indicated that he had gone around the back of the building at one point and, ah, when he came back around the front, that he saw Kevin lying on the ground and that he helped Kevin backup into his chair and that he and Donna Wilson then left northward on Cleveland Avenue and went to the Family Dollar Store." Tr. Vol. II at 35-36.
 {¶ 19} The above statement was not taped. However, after making this statement, Detective Rukavina taped Co-Defendant Bryant's statement. During the taped statement, Detective Rukavina testified that Co-Defendant Bryant stated as follows:
 {¶ 20} "A. During the taped statement, again, he indicated that — ah, at that time he indicated that Brant [sic] must have fallen out of his chair and hit his head and that he helped him back up into the chair. During that taped statement he indicated that Donna Wilson was not there on that particular occasion." Id. at 37.
 {¶ 21} Detective Rukavina also testified about an interview he attempted to conduct with appellant. At the interview, appellant informed Detective Rukavina that she was nowhere near the apartment building when the incident occurred and that she was not involved in it. Id. at 43. However, following a couple more questions, Detective Rukavina determined appellant was too intoxicated to continue with the interview. Id. at 42.
 {¶ 22} The record further indicates that prior to playing Co-Defendant Bryant's taped statement to the jury, the trial court gave the following instruction:
 {¶ 23} "Ladies and gentlemen, before you hear the statement of the one defendant, it may be appropriate for you to understand that this is a statement being offered as it relates to this particular defendant. You should consider it for that limited purpose only. And not necessarily, ah, unless there is some other additional proof, that the other defendant in some way had something to do with, was present while the statement was made, was part of the statement or something like that. It should only be considered for use against the defendant that it deals with at this point." Id. at 39-40.
 {¶ 24} As in Bruton, although the trial court clearly instructed the jury to only consider the statement as it pertains to appellant's co-defendant, said instruction was not an adequate substitute for appellant's constitutional right of cross-examination. Further, Co-Defendant Bryant's initial statement to Detective Rukavina places appellant as the sole person alone with McGraw when he received his injuries. It was only in his taped statement that Co-Defendant Bryant stated that appellant was not present on the premises. Thus, in addition to the conflicting statements, Co-Defendant Bryant's first statement directly implicates appellant as the perpetrator of the crime as she was the only person in the presence of McGraw when he received his injuries.
 {¶ 25} Juries are presumed to follow and obey the curative instructions given by a trial court. See Parker v. Randolph (1979),442 U.S. 62, 74-75; State v. Franklin (1991), 62 Ohio St.3d 118, 127, certiorari denied (1992), 504 U.S. 960. However, in the matter currently before the court, we believe the curative instruction given by the trial court is insufficient to remedy any prejudice appellant may have suffered as a result of Detective Rukavina's testimony.
 {¶ 26} Although a Bruton violation exists, in Schneble v. Florida
(1972), 405 U.S. 427, the United States Supreme Court explained that the mere finding of a violation of the Bruton rule does not automatically require reversal of the ensuing criminal conviction. Id. at 430. Rather, the Court explained that, in some cases, the properly admitted evidence of guilt is so overwhelming, and the prejudicial effect of the co-defendant's admission is so insignificant by comparison, that it is clear beyond a reasonable doubt that the improper use of the admission was harmless error. Id.
 {¶ 27} In the case sub judice, we find the evidence of appellant's guilt is not overwhelming. Appellant denied any involvement in the incident. Although McGraw testified that he was hit on the head, he did not name the perpetrator of the crime. Thus, the only evidence linking appellant to the crime is the statement of Co-Defendant Bryant and even these statements are conflicting as to appellant's involvement.
 {¶ 28} Therefore, we find, under the prejudice prong of theStrickland test, that the result of the trial was unreliable and the proceeding fundamentally unfair because of defense counsel's failure to object to the admission of the co-defendant's statement as it pertained to appellant. Accordingly, we sustain appellant's ineffective assistance of counsel argument as it pertains to her co-defendant's statements to Detective Rukavina. We will not address appellant's remaining argument in her first assignment of error or appellant's second assignment of error as they are moot based upon our disposition of the above issue.
 {¶ 29} Appellant's first assignment of error is sustained.
 {¶ 30} For the foregoing reasons, the judgment of the Court of Common Pleas, Stark County, Ohio, is hereby reversed and remanded for further proceedings consistent with this opinion
By: Wise, J., Gwin, J., concurs.
Hoffman, P.J., dissents.
Topic: bruton issue.