OPINION
{¶ 1} Defendant-appellant Kenyan Selmon appeals his conviction and sentence entered by the Richland County Court of Common Pleas, on one count of assault, in violation of R.C. 2903.13; two counts of intimidation of a witness, in violation of R.C. 2921.04 (B); two counts of retaliation, in violation of R.C. 2921.05(B); and one count of perjury, in violation of R.C. 2921.11(A), following a jury trial. Plaintiff-appellee is the State of Ohio.
 STATEMENT OF THE FACTS AND CASE {¶ 2} On the evening of November 28, 2005, appellant and his girlfriend, Ouida Birdow, were returning home from an evening out when they became involved in a verbal altercation. The verbal argument ultimately became physical with appellant striking Birdow in the face, causing two black eyes. Appellant also shoved Birdow to the ground, which result in her breaking her clavicle. Birdow's thirteen year old nephew, Travon Smith, witnessed the argument and ensuing physical altercation from his bedroom window and called 9-1-1. Birdow also called 9-1-1. The fire department rescue squad and the police were dispatched to Birdow's residence.
 {¶ 3} When the police and paramedics arrived, they found Birdow in a bedroom, crying and holding her shoulder. Officer David Minard attempted to speak to Birdow, however, she was reluctant to tell him about the incident. Based upon his experience, Officer Minard filled out and signed a domestic violence packet, charging appellant with domestic violence. The officer then placed appellant under arrest.
 {¶ 4} Birdow did not cooperate with the paramedics who attemped to treat her. Due to the severity of Birdow's injuries, the paramedics transported her to MedCentral *Page 3 
Hospital. Birdow subsequently told one of the paramedics she was hit in the face with a fist and her shoulder was injured when she was thrown to the ground. At the hospital, Birdow underwent x-rays of her shoulder and head. While waiting for the results of the x-ray, she asked to speak with Officer Minard. Birdow made a statement to the officer, implicating appellant as the person who caused her injuries. She also reported to the emergency room doctor her chief complaint was that she had been beaten. Birdow waited several hours in the emergency room, but left the hospital before learning the results of the x-rays. A member of the hospital staff contacted Birdow and informed her she had a broken collar bone. Birdow returned to the emergency room where her arm was placed in a splint and she received pain medication. After Officer Minard learned Birdow had a broken collar bone, he filed a charge of felonious assault against appellant.
 {¶ 5} Appellant called Birdow from jail on December 4, 2005. During the phone conversation, he instructed Birdow to tell the judge she had been in a fight with a women named Jennifer with whom appellant was having an affair. Appellant specifically told her to say he had nothing to do with her injuries. Four days later, on December 8, 2005, Birdow testified under oath at appellant's preliminary hearing. Birdow testified as appellant had instructed her, stating she became involved in a fight with another woman, during which she slipped and hurt her shoulder. Birdow explained her injuries occurred because she was drunk. Birdow admitted she and appellant had an argument that night. Officer Minard also testified at the preliminary hearing regarding the statement Birdow gave him at the hospital. *Page 4 
 {¶ 6} Following the preliminary hearing, appellant called Birdow from the jail, enraged she had given a statement to the police while at the hospital. He was also angry about her testimony they had argued the night she was injured. Appellant called Birdow a rat, and told her she "burned him" by making the statement to the police. Appellant placed over 170 calls to Birdow. During these phone conversations, appellant acknowledged beating Birdow, telling her her mouth was responsible for her receiving the black eyes.
 {¶ 7} Appellant pressured Birdow to drop the charges against him, lie to the court, or not show up for the trial. Appellant tried to make Birdow feel guilty for causing him to be in jail and facing a potential of ten years in prison. When those attempts were unsuccessful, appellant threatened Birdow, raging he would make her pay for everything she did.
 {¶ 8} Based upon those telephone calls, the State filed additional charges against appellant. The Richland County Grand Jury indicted appellant on one count of aiding and abiding perjury, two counts of intimidation and two counts of retaliation. The cases were consolidated and scheduled for trial on April 13, 2006. Prior to trial, appellant filed a motion in limine and motion for redaction of audio tapes of appellant's phone calls to Birdow from the jail. Via Judgment Entry filed April 13, 2006, the trial court sustained appellant's motion in limine relating to statements made by Birdow to Officer Minard. The trial court also instructed the State to redact all references in the audio tapes of appellant's criminal history.
 {¶ 9} During the trial, the State played portions of the phone calls. One excerpt contained two comments by appellant in which he refers to returning to the penitentiary *Page 5 
and to his prior convictions. Appellant objected, and the trial court found the references were minor and the State was making ongoing efforts to redact the tapes. Appellant refused the trial court's offer of a curative instruction.
 {¶ 10} In another phone call played for the jury, appellant mentions Mansfield Correctional Institution as well as the fact he had been in jail "enough". Defense counsel brought this unredacted reference to the trial court's attention and requested a mistrial. The trial court denied the motion, finding the State had made a good faith effort to redact the tapes. The trial court also stated appellant knew the phone calls were recorded; therefore, he voluntarily put these remarks before the jury.
 {¶ 11} After hearing all the evidence and deliberations, the jury found appellant not guilty of felonious assault, but guilty of the lesser included charge of assault; and guilty of the remaining charges. The trial court sentenced appellant to an aggregate prison term of twelve years.
 {¶ 12} It is from these convictions and sentence appellant appeals, raising the following assignments of error:
 {¶ 13} "I. APPELLANT'S CONVICTION ON THE CHARGES OF RETALIATION IS CONTRARY TO THE MANIFEST WEIGHT AND SUFFICIENCY OF EVIDENCE PRESENTED AT TRIAL, DUE TO THE STATE'S FAILURE TO PROVE EACH AND EVERY ELEMENT OF THE CHARGE BY PROOF BEYOND A REASONABLE DOUBT, THUS DENYING APPELLANT OF A FAIR TRIAL AND DUE PROCESS OF LAW.
 {¶ 14} "II. THE TRIAL COURT DEPRIVED APPEALLANT [SIC] OF A FAIR TRIAL AND DUE PROCESS OF LAW IN ITS DENIAL OF APPEALLANT'S [SIC] RULE 29 MOTION FOR JUDGMENT OF ACQUITTAL. *Page 6 
 {¶ 15} "III. THE TRIAL COURT ABUSED ITS DISCRETION BY DENYING APPELLANT'S MOTION FOR MISTRIAL, WHICH VIOLATED APPEALLANT'S [SIC] RIGHT TO DUE PROCESS AND A FAIR TRIAL."
 I, II {¶ 16} Because appellant's first and second assignments of error require similar analysis, we shall address said assignments of error together. In his first assignment of error, appellant challenges the sufficiency and weight of the evidence with regard to his conviction on two counts of retaliation. In his second assignment of error, appellant contends the trial court violated his rights to due process and a fair trial by denying his Crim. R. 29 Motion for Judgment of Acquittal, also with respect to his convictions on the two counts of retaliation.
 {¶ 17} In State v. Jenks (1981), 61 Ohio St.3d 259, the Ohio Supreme Court set forth the standard of review when a claim of insufficiency of the evidence is made. The Ohio Supreme Court held: "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."Id. at paragraph two of the syllabus.
 {¶ 18} On review for manifest weight, a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses and determine whether in resolving conflicts in the evidence, the trier of fact *Page 7 
clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed. The discretionary power to grant a new hearing should be exercised only in the exceptional case in which the evidence weighs heavily against the judgment." State v.Thompkins, 78 Ohio St.3d 380, 387, 1997-Ohio-52, citing State v.Martin (1983), 20 Ohio App.3d 172, 175. Because the trier of fact is in a better position to observe the witnesses' demeanor and weigh their credibility, the weight of the evidence and the credibility of the witnesses are primarily for the trier of fact. State v. DeHass (1967),10 Ohio St.2d 230, syllabus 1.
 {¶ 19} The standard to be used by a trial court in determining a Crim.R. 29 motion is set forth in State v. Bridgeman (1978),55 Ohio St.2d 261, syllabus. The Bridgeman Court found: "`Pursuant to Crim.R. 29(A), a court shall not order an entry of judgment of acquittal if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt'." An appellate court reviews a denial of a Crim.R. 29 motion for acquittal using the same standard used to review a sufficiency of the evidence claim. See State v. Carter (1995),72 Ohio St.3d 545, 553, 1995-Ohio-104. Thus, `[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.' State v. Jenks (1991),61 Ohio St.3d 259, paragraph two of the syllabus."
 {¶ 20} Appellant was convicted of two counts of retaliation, in violation of R.C. 2921.05, which reads, in pertinent part: *Page 8 
 {¶ 21} "(B) No person, purposely and by force or by unlawful threat of harm to any person or property, shall retaliate against the victim of a crime because the victim filed or prosecuted criminal charges.
 {¶ 22} "(C) Whoever violates this section is guilty of retaliation, a felony of the third degree." Accordingly, in order to find appellant guilty of retaliation, the State's evidence had to be such that, if believed, the jury could have found beyond reasonable doubt appellant: (1) purposely, (2) by unlawful threat of harm to Birdow, (3) retaliated against Birdow, (4) because Birdow filed or prosecuted criminal charges. See, State v. Lambert (June 5, 1998), Montgomery App. No. 16667, unreported.
 {¶ 23} Appellant contends the State failed to prove Birdow "filed or prosecuted" the criminal charges against him. Appellant explains Officer Minard testified he initiated the charges against appellant due to Birdow's lack of willingness to do so. Officer Minard completed the domestic violence packet and pursued the charge of felonious assault after learning the extent of Birdow's injuries. Appellant adds Birdow was not in a position to "drop the charges," and she never sought a protective order or reported appellant's threats to law enforcement officials. Appellant concludes there is no evidence Birdow cooperated in initiating or furthering the prosecution, other than her testimony at the preliminary hearing. We do not believe Birdow's failure to drop the charges or failure to report appellant's threats necessarily equate to her failure to file or prosecute the criminal charges.
 {¶ 24} We must construe the word "prosecute". Webster's New International Dictionary defines "prosecute" as follows: "To seek to obtain, enforce, or the like by legal process; as, to prosecute a right or a claim in a court of law." In the parlance of *Page 9 
lawyers, the word "prosecute" is commonly understood to mean "to engage in a proceeding before a court, or to carry on litigation". Additionally, the Oxford Dictionary (1909), p. 1489, defines "prosecute" as "to follow, pursue, attend, follow up, persevere or persist in". See, also, Standard Dictionary to the same effect.
 {¶ 25} Black's Law Dictionary defines "prosecuting witness" as: "The private person upon whose complaint or information a criminal accusation is founded and whose testimony is mainly relied on to secure a conviction at the trial. In a more particular sense, the person who was chiefly injured, in person or property, by the act constituting the alleged crime (as in case of robbery, assault, criminal negligence, bastardy, and the like), and who instigates the prosecution and gives evidence."
 {¶ 26} We find Birdow was the private person upon whose information the criminal action against appellant was founded. Birdow called 911; provided Officer Minard with an oral statement; and testified at the preliminary hearing. Birdow's statements to the paramedics as well as her statements to Officer Minard and the emergency room doctor were clearly relied upon to secure appellant's conviction. We find these actions are tantamount to her prosecuting the criminal charges against appellant. As in many assault and domestic violence cases, the victims are reluctant to pursue charges or testify, either out of fear or hope the aggressor will change his behavior. We believe reading R.C.2921.05(B) in the narrow and restrictive manner appellant asks us to do would defeat the legislative intent.
 {¶ 27} Accordingly, we find appellant's convictions on two counts of retaliation were not against the manifest weight or the sufficiency of the evidence. We further find *Page 10 
the trial court did not err in denying appellant's Crim. R. 29 motion for acquittal of the retaliation charges.
 {¶ 28} Appellant's first and second assignments of error are overruled.
 III {¶ 29} In his final assignment of error, appellant maintains the trial court abused its discretion in denying its motion for a mistrial.
 {¶ 30} The grant or denial of a mistrial rests within the sound discretion of the trial court. State v. Sage (1987), 31 Ohio St.3d 173,182. Moreover, mistrials need be declared only when the ends of justice so require and a fair trial is no longer possible. State v.Franklin (1991), 62 Ohio St.3d 118. "An appellate court will not disturb the exercise of that discretion absent a showing that the accused has suffered material prejudice." Sage, supra at 182.
 {¶ 31} Prior to trial, the trial court ordered the State to redact from the audio tapes any reference appellant makes to his prior record. However, when the State played the audiotapes for the jury, it became evident the State had not redacted all of these references.
 {¶ 32} Call Seven included the following:
 {¶ 33} "Mr. Selmon: Damn, baby, you know I don't. Look at the shit (inaudible) every day, dawg, every mother-fucking thing I lost, and now I'm to the point now I'm at the bottom of the mother-fucking barrel now in the penitentiary again. Can you pay attention to that?
 {¶ 34} "* * * *Page 11 
 {¶ 35} "Mr. Selmon: You can't possibly — you can't possibly. Ouida, you mean to tell me you would rather for me to go do eight years than you do thirty days?
 {¶ 36} "* * *
 {¶ 37} "Mr. Selmon: You really didn't understand what I was telling you when I said tell them I didn't did nothing, did you? * * * I said tell them I didn't do nothing. When I say nothing, I mean nothing. I lied. Everybody lies sometimes. Now I'm about to cop out and go to the penitentiary, Ouida, and know goddamn well I've got three, four mother-fucking numbers so you know I ain't got no —"
 {¶ 38} Tr. at 483-484.
 {¶ 39} At this point, defense counsel asked to approach the bench. He questioned why the State had not redacted the references to appellant's prior convictions. The prosecutor informed the trial court he was not aware of those references. The trial court admonished the prosecutor and asked defense counsel if he wanted something said to the jury. Counsel for appellant declined the trial court's offer, explaining he did not want to bring more attention to the remarks. The trial court noted the difficulty in editing all the references as appellant "would rattle off in mid-sentence, trying to make Birdow feel guilty." The trial court added it would not strike all of the references because such were evidence of the pressure appellant put on Birdow.
 {¶ 40} The playback of the phone calls continued without incident until Call Eleven, which included the following:
 {¶ 41} "Mr. Selmon: I'm saying, Ouida, you didn't even have to show up to that courtroom, man. I'm telling you, dawg, if you had a warrant they would have picked you up on that in that courtroom. I'm telling you for what I know. Like they did me. I know *Page 12 
Mansfield (inaudible). I have enough warrants. I've been in jail enough, don't you think, huh? Hello?"
 {¶ 42} Tr. at 519.
 {¶ 43} Defense counsel did not ask to approach the bench regarding this reference. Several additional phone calls were played for the jury. Thereafter, defense counsel made a motion for a mistrial, arguing the State had failed to redact the portions of the tapes referencing appellant's prior criminal record, and as a result, the jury heard highly prejudicial evidence.
 {¶ 44} Appellant submits the State had sufficient evidence without including the references at issue, and the prohibited portions of the phone calls were not crucial to the State's case. The trial court denied appellant's mistrial motion, finding the State had made a good faith effort to redact the phone call tapes. The trial court also noted, during these phone conversations, appellant knew the calls were being recorded. The trial court found appellant had voluntarily put the information before the jury.
 {¶ 45} Upon review of the entire record in this matter, we find the trial court did not abuse its discretion in denying appellant's motion for a mistrial. As the trial court correctly determined, the State made a good faith effort to redact the audiotapes. Appellant's comments represent a small portion of the hundreds of minutes of phone conversations he had with Birdow. Furthermore, appellant put his prior record out in the open as he knew the phone calls were recorded. We further find the references to appellant's prior record explain his motivation for intimidating Birdow. The information contained in the audiotapes of the phone conversation formed a part of the res gestae of the offense. Appellant's prior prison record was a reason for his making the *Page 13 
threatening phone calls to Birdow. Even if the trial court's admission of those portions of the phone calls was erroneous, we find such was not prejudicial as the jury heard overwhelming evidence of appellant's guilt.
 {¶ 46} Appellant's third assignment of error is overruled.
 {¶ 47} The judgment of the Richland County Court of Common Pleas if affirmed.
Hoffman, J. Gwin, P.J. and Farmer, J. concur.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Richland County Court of Common Pleas if affirmed. Costs assessed to appellant. *Page 1