THE STATE OF OHIO, APPELLEE, *v.* FRANKLIN, APPELLANT.

[Cite as *State v. Franklin* (1991), 62 Ohio St.3d 118.]

(No. 90–1914—Submitted September 17, 1991—Decided November 20, 1991.)

121

*Arthur M. Ney, Jr.,* Prosecuting Attorney, and *William E. Breyer,* for appellee.

*Roxann H. Dieffenbach* and *Candace C. Greenham,* for appellant.

HERBERT R. BROWN, J. R.C. 2929.05(A) requires us to undertake a three-part analysis in capital cases. First, we must review the judgment and consider Franklin's claims of error. Second, we must independently weigh the evidence of aggravating and mitigating factors. Third, we must decide whether the sentence of death is excessive or disproportionate to the penalty imposed

in similar cases. For the reasons set forth below, we affirm the convictions and uphold the sentence of death.

## I

### Trial Errors

We first consider appellant's asserted legal errors at trial. The principal issues include the joinder of the Winston burglary with the other charges, the sufficiency of the evidence, and the admission of gruesome exhibits.

### *Joinder of Offenses*

Franklin argues in his second proposition of law that joinder of the Winston aggravated burglary charge with the Strauss aggravated murder and aggravated burglary charges was improper under Evid.R. 403 and 404. The prosecution relies on Crim.R. 8(A).

The law favors joining multiple criminal offenses in a single trial under Crim.R. 8(A). *State v. Lott* (1990), 51 Ohio St.3d 160, 163, 555 N.E.2d 293, 298. Two or more offenses can be joined if they are of the same or similar character. *State v. Torres* (1981), 66 Ohio St.2d 340, 343, 20 O.O.3d 313, 314–315, 421 N.E.2d 1288, 1290. An accused may move to sever under Crim.R. 14 if he can establish prejudice to his rights. *State v. Lott*, 51 Ohio St.3d at 163, 555 N.E.2d at 298; *State v. Wiles* (1991), 59 Ohio St.3d 71, 76, 571 N.E.2d 97, 108. For the appellate court to reverse a trial court ruling that denies severance, the accused must show that the trial court abused its discretion. *State v. Lott*, 51 Ohio St.3d at 163, 555 N.E.2d at 298; *State v. Torres, supra*, at syllabus.

The prosecutor may counter the claim of prejudice in two ways. *State v. Lott*, 51 Ohio St.3d at 163, 555 N.E.2d at 298. The first is the "other acts" test, where the state can argue that it could have introduced evidence of one offense in the trial of the other, severed offense under the "other acts" portion of Evid.R. 404(B). *Id.;* see, also, *Bradley v. United States* (C.A.D.C.1969), 433 F.2d 1113, 1118–1119. The second is the "joinder" test, where the state is merely required to show that evidence of each of the crimes joined at trial is simple and direct. *State v. Lott, supra; State v. Roberts* (1980), 62 Ohio St.2d 170, 175, 16 O.O.3d 201, 204, 405 N.E.2d 247, 251; *State v. Torres*, 66 Ohio St.2d at 343–344, 20 O.O.3d at 315, 421 N.E.2d at 1291. If the state can meet the joinder test, it need not meet the stricter "other acts" test. Thus, an accused is not prejudiced by joinder when simple and direct evidence exists, regardless of the admissibility of evidence of other crimes under Evid.R. 404(B). *State v. Lott, supra; State v. Roberts, supra; State v. Torres, supra.*

In this case, the evidence as to the Winston burglary was simple and direct. Winston knew Franklin casually, saw him looking at her from his apartment in a suspicious way and, as a result, named him as a suspect. The close proximity of Franklin's dwelling and the placement of the garbage can pointed to Franklin. Franklin's fingerprint on the picture frame was strong evidence of his guilt.

The fingerprint evidence made proof of the Strauss burglary-murder simple and direct also. No evidence was presented to explain how (other than from the burglary-murder) Franklin's fingerprints could be present in the Strauss home. Testimony from two witnesses established that the champagne bottle had been moved during the burglary. The fingerprint experts unequivocally identified the print found on the bottle as Franklin's. In addition, the testimony of fellow inmate Weaver points to Franklin as having taken the items from the Strauss home, and having killed Strauss.

The two crimes are of the same or similar character. Both involved burglaries of residences in the same neighborhood, and entry was secured by tearing or cutting a screen in a rear window. The items taken in both were of a similar character. It is unlikely that the jury would have confused the evidence proving the separate Winston and Strauss burglaries. Franklin has not attempted to argue that he would have defended either case differently if the charges had not been joined. The trial court instructed the jury on the limited use it could make of the evidence in the Winston burglary. Under these circumstances, the trial court did not err in joining the cases under Crim.R. 8(A). *State v. Wiles, supra; State v. Lott,* 51 Ohio St.3d at 163, 555 N.E.2d at 298–299.

### Sufficiency of the Evidence

In his third proposition of law, Franklin argues that his convictions are contrary to the manifest weight of the evidence. In addition, Franklin argues that fingerprint evidence alone is insufficient to sustain a conviction.

When reviewing a criminal conviction, " * * * [t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. (*Jackson v. Virginia* [1979], 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560, followed.)" *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus. See, also, *State v. Watson* (1991), 61 Ohio St.3d 1, 12, 572 N.E.2d 97, 107; *State v. DeHass* (1967), 10 Ohio St.2d 230, 39 O.O.2d 366, 227 N.E.2d 212, paragraphs one and two of the syllabus.

This court has held that "[f]ingerprints corresponding to those of the accused are sufficient proof of his identity to sustain his conviction, where the circumstances show that such prints, found at the scene of the crime, could only have been impressed at the time of the commission of the crime." *State v. Miller* (1977), 49 Ohio St.2d 198, 3 O.O.3d 321, 361 N.E.2d 419, syllabus.

For both the Winston burglary and the Strauss burglary-murder, the testimony at trial was sufficient to support the jury's findings of guilt.

In the Strauss burglary, there is no evidence that Franklin had any explained access to the Strauss residence. There was evidence that the champagne bottle was moved during the burglary. Karen Strain testified that it had been on the kitchen windowsill during the day before the burglary. Several police investigators testified, and the photographic evidence shows, that the bottle was in the guest bedroom the morning after the burglary. Testimony also indicated that the guest bedroom was the original location of the murder weapon. Franklin's fingerprint on the bottle, in the context of the other evidence, is sufficient to sustain his conviction for the burglary and murder in the Strauss residence.

Moreover, Turnbolt testified that on the evening of the Strauss murder, at 10:30 p.m., Franklin had no money, but when he appeared several hours later, he had at least $100 in cash, which he used to buy cocaine. He had also changed his shirt in the interim. Fellow inmate Weaver testified that Franklin admitted he had "already got one and one more wouldn't hurt." Testimony also indicated that Franklin said the police would never find the stolen property they were looking for.

Franklin's claim that the evidence was insufficient because it was entirely circumstantial is also unfounded. It included the admissions by Franklin, which are direct evidence. In addition, circumstantial evidence can have the same probative value as direct evidence. *State v. Jenks, supra,* at paragraph one of the syllabus. A conviction can be sustained based on circumstantial evidence alone. *State v. Nicely* (1988), 39 Ohio St.3d 147, 154–155, 529 N.E.2d 1236, 1242–1243. We find sufficient evidence to sustain Franklin's conviction for the murder and burglary committed in the Strauss residence.

We also find sufficient evidence to sustain Franklin's conviction for the Winston burglary. Although Winston admits that Franklin had, with her permission, been in her apartment for a brief time, she denied that he had touched the picture on that occasion, or that she had dated him. The jury was entitled to believe Winston.

Circumstantial evidence suggests that the burglar gained entry to the Winston apartment by moving a metal trash can underneath the window. After police questioned him about the burglary, Franklin disappeared. Final-

ly, his fingerprint on the picture that had been on top of the stolen TV points directly to Franklin.

### Gruesome Exhibits

In Proposition of Law No. 4, Franklin argues that the trial court improperly admitted certain photographs and a videotape of the scene and body. He asserts that this was inherently prejudicial, meant to overwhelm the jury with sympathy toward the victim, and therefore violated his right to a fair trial. Franklin points out that the photographs and videotape were so gruesome that the victim's family members were advised to leave the courtroom.

Under Evid.R. 403(A), the admission of potentially prejudicial exhibits is determined under a balancing test: the probative value of the evidence must be weighed against the danger of unfair prejudice. If the danger of undue prejudice substantially outweighs its probative value the evidence is not admissible. Evid.R. 403(B). In applying the rule to a capital case, this court held that "[p]roperly authenticated photographs, even if gruesome, are admissible in a capital prosecution if relevant and of probative value in assisting the trier of fact to determine the issues or are illustrative of testimony and other evidence, as long as the danger of material prejudice to a defendant is outweighed by their probative value and the photographs are not repetitive or cumulative in number." *State v. Maurer* (1984), 15 Ohio St.3d 239, 15 OBR 379, 473 N.E.2d 768, paragraph seven of syllabus. See, also, *State v. Morales* (1987), 32 Ohio St.3d 252, 257–258, 513 N.E.2d 267, 273–274.

Thus, relevant, nonrepetitive photographs in capital cases, even if gruesome, are admissible as long as the probative value of each outweighs the danger of material prejudice to the accused. *State v. Maurer, supra.* The mere fact that a photograph is gruesome is not sufficient to render it *per se* inadmissible. *State v. Maurer*, 15 Ohio St.3d at 265, 15 OBR at 401, 473 N.E.2d at 791; *State v. Woodards* (1966), 6 Ohio St.2d 14, 25, 35 O.O.2d 8, 14, 215 N.E.2d 568, 577.

The questioned exhibits fall into three categories: on-scene still photographs, coroner's photograph and slides, and a videotape of the scene. The on-scene photographs depict blood, but no gaping wounds. Exhibit 28 is a photograph of the bloodstained bed and a ripped-out telephone. Exhibit 29 depicts most of the bedroom, including the bloodstained bed and a fraction of the body. Exhibit 30 shows the victim's body with blood but no wounds appearing. Exhibit 31 depicts the upper half of the body and part of the bed, and Exhibit 32 the head and upper chest. These photographs illustrated the testimony of the police officers. There is no indication that they were

needlessly cumulative or that the trial court abused its discretion in admitting them.

Exhibit 33 profiles the entire body at the morgue. Exhibit 34–A shows the wound on the victim's hand. 34–B and C show the wounds to the victim's face. 34–D, E and F are gruesome, showing the wounds on the back of Strauss's head. An additional slide, depicting the back of the head after the skin had been peeled back, was not shown to the jury. The photograph and slides illustrated the coroner's testimony, and clearly demonstrated the intent behind infliction of the wounds. The photograph and slides were not excessively repetitive. *State v. DePew* (1988), 38 Ohio St.3d 275, 281, 528 N.E.2d 542, 550–551. The probative value of each photograph outweighed the danger of material prejudice, and the trial court was within its discretion in admitting them. *State v. Maurer, supra.*

Exhibit 40 is a fifteen-minute videotape that depicts the Strauss townhouse and grounds. The bedroom where Strauss was killed and the body itself are depicted for less than three minutes. Again, the tape served to illustrate testimony, had clear probative value, and was not cumulative or repetitive. *State v. Maurer*, 15 Ohio St.3d at 265–266, 15 OBR at 401–402, 473 N.E.2d at 791–792. *State v. DePew, supra.* The trial court did not abuse its discretion in admitting the videotape.

### *Denial of Motion for Mistrial*

During the sentencing hearing, the defense called Stuart Richard Arnold, a Cincinnati attorney, to testify for Franklin. Despite a separation order, Arnold sat through the guilt phase of the trial. The court allowed him to testify after being assured that he was unknown to defense counsel until after the guilt phase, and had not come forward until Franklin was found guilty. Franklin contends in his fifth proposition of law that a remark by the trial judge pertaining to Arnold's testimony denied him a fair trial.

While testifying, Arnold expressed the opinion that because of Franklin's character, Franklin could not be guilty of killing anyone. The court, in sustaining the prosecution's objection, remarked to the jury that "[h]e [Arnold] was here throughout the trial and could have testified about that during the trial." Counsel for Franklin moved for a mistrial, and the court overruled the motion. Franklin contends that this was prejudicial error, because the comment suggested that Franklin had the burden to bring forth evidence in his own defense. No curative instruction was given to the jury until later that day, just before closing arguments. At that time the trial judge said: "What I meant when I said that, that that [the guilt phase of the trial] was the appropriate time for him [Arnold] to give that kind of testimony because it

pertained to innocence or guilt. But I want you to remember that the defendant in this case isn't required to produce anything and if I gave you that impression, I want to dispell [*sic*] it and I'm going to ask you to disregard what I said about that. But I did think I should tell you what I meant when I said it."

Franklin argues that by not giving a prompt curative instruction, the judge gave more credibility to his misstatement, and possibly confused the jury. He contends that the jury deliberations were tainted by the prospect that he had an obligation to present witnesses on his behalf to prove his innocence.

The trial judge arguably erred in three ways: first, in sustaining the prosecution's objection to Arnold's expression of opinion of Franklin's character; second, in pointing out that Arnold had been a spectator throughout the guilt phase of the trial; and third, in implying defendant had a burden of proof, and then in delaying his curative instruction.

As to Arnold's opinion testimony, a defendant in a capital sentencing proceeding is entitled to wide latitude in the presentation of mitigation evidence. *Eddings v. Oklahoma* (1982), 455 U.S. 104, 110–112, 102 S.Ct. 869, 874–875, 71 L.Ed.2d 1, 8–9; *Skipper v. South Carolina* (1986), 476 U.S. 1, 106 S.Ct. 1669, 90 L.Ed.2d 1. Arnold was permitted to testify at length about his relationship to Franklin, and his general opinion of Franklin's character. The jury was permitted to consider that testimony when it recommended the death penalty. The trial court did not commit prejudicial error by disallowing the additional testimony that Franklin was incapable of killing.

Arnold's presence in the courtroom during the guilt phase of the trial was evident to the jury. Arnold's presence in the courtroom could have been explored on cross-examination. A separation order under Evid.R. 615 was in effect. Corrective measures open to the court when a separation order is violated include "permitting the transgression to reflect upon the witness's credibility." 1 Weissenberger's Ohio Evidence (1990) 91, Section 615.3. See, also, *Dickson v. State* (1883), 39 Ohio St. 73, paragraph one of the syllabus.

Although the judge did delay his curative instruction, it was given before the jury deliberated on the sentencing. He clearly eliminated any inference that the defendant was required to present evidence on his own behalf. The jury should be presumed to have obeyed this instruction. *Parker v. Randolph* (1979), 442 U.S. 62, 74–75, 99 S.Ct. 2132, 2140, 60 L.Ed.2d 713, 724.

Mistrials need be declared only when the ends of justice so require and a fair trial is no longer possible. *Illinois v. Somerville* (1973), 410 U.S. 458, 462–463, 93 S.Ct. 1066, 1069–1070, 35 L.Ed.2d 425, 429–430; *Arizona v. Washington* (1978), 434 U.S. 497, 505–506, 98 S.Ct. 824, 830–831, 54 L.Ed.2d 717, 728–729. Although the judge's comment was inartful, we fail to see any

prejudice caused by it. The claim that a mistrial should have been declared lacks merit.

### Instructions on Motive

During the course of the trial, counsel for Franklin did not request a special instruction on motive, or object when no such instruction was given. Nevertheless, in his sixth proposition of law, Franklin argues that the lack of an instruction on motive in a case resting exclusively on circumstantial evidence is plain error. The state argues that Franklin's failure to object constituted a waiver, and that such an instruction does not fit the facts of this case.

Under Crim.R. 30(A), any request for a special instruction must be made in writing, and any objection to the failure of the trial court to give such an instruction must be made before the jury retires to deliberate. Failure to do so constitutes waiver, unless plain error can be proved. *State v. Underwood* (1983), 3 Ohio St.3d 12, 3 OBR 360, 444 N.E.2d 1332, syllabus. Plain error is found where, but for the error, the outcome of the trial would have been otherwise. *Id.* Notice of plain error is to be taken only to prevent a manifest miscarriage of justice. *State v. Long* (1978), 53 Ohio St.2d 91, 7 O.O.3d 178, 372 N.E.2d 804, paragraph three of the syllabus.

This court held in *State v. Lancaster* (1958), 167 Ohio St. 391, 5 O.O.2d 28, 149 N.E.2d 157, that in a murder case where the identity of the killer is shown only by circumstantial evidence, motive becomes an important issue, and the trial court has a duty to instruct the jury to take the evidence on motive into consideration. *Id.* at paragraph three of the syllabus. However, in that case motive was disputed and there was a request for the instruction. Further, the court did not reverse the conviction, despite the lack of an instruction.

In this case, the motive for the Strauss murder was evident. The missing VCR, money and watch make it clear that theft was the motive. No other motive is suggested and Franklin supplies none. In this case the absence of an instruction on motive does not rise to the level of plain error.

### Constitutional Issues

In Proposition of Law No. 1, Franklin makes various constitutional challenges to his death sentence. This court has already rejected these arguments.

In Proposition of Law No. 1(a), Franklin asserts that the application of the death penalty is unconstitutional under the Fourteenth Amendment to the United States Constitution, and under Section 16, Article I of the Ohio Constitution. We have held that the death penalty statutes serve rational state interests, and do not violate the Fourteenth Amendment or any provision

of the Ohio Constitution. *State v. Jenkins* (1984), 15 Ohio St.3d 164, 15 OBR 311, 473 N.E.2d 264, paragraph one of the syllabus.

Proposition of Law No. 1(b) asserts that Franklin's death sentence is unconstitutional because the aggravating circumstance for felony murder is identical to an element of aggravated murder. This argument has also been rejected. *State v. Henderson* (1988), 39 Ohio St.3d 24, 528 N.E.2d 1237, paragraph one of the syllabus. See, also, *Lowenfield v. Phelps* (1988), 484 U.S. 231, 241–246, 108 S.Ct. 546, 552–555, 98 L.Ed.2d 568, 579–583.

In Proposition of Law Nos. 1(c) and (d), Franklin asserts that aggravating circumstances must substantially outweigh mitigating factors before the death penalty is constitutionally imposed, and that the Ohio statutes do not permit the extension of mercy by the jury. The balancing argument has been considered and rejected. *State v. Jenkins*, 15 Ohio St.3d at 171–173, 15 OBR at 317–319, 473 N.E.2d at 276–277; *State v. Beuke* (1988), 38 Ohio St.3d 29, 38–39, 526 N.E.2d 274, 285; *State v. Zuern* (1987), 32 Ohio St.3d 56, 63–64, 512 N.E.2d 585, 592–593; *State v. Buell* (1986), 22 Ohio St.3d 124, 139, 22 OBR 203, 216, 489 N.E.2d 795, 809. Ohio statutes do not preclude defense counsel from pleading for mercy. *State v. Rogers* (1986), 28 Ohio St.3d 427, 434, 28 OBR 480, 486, 504 N.E.2d 52, 58; *State v. Steffen* (1987), 31 Ohio St.3d 111, 125, 31 OBR 273, 285–286, 509 N.E.2d 383, 396.

In Proposition of Law No. 1(e), Franklin asserts that the Ohio capital sentencing scheme provides no standards for sentencing or review at several important stages. We have held that the statutes provide adequate standards for sentencing. See, *e.g.*, *State v. Scott* (1986), 26 Ohio St.3d 92, 109, 26 OBR 79, 94, 497 N.E.2d 55, 69. Proposition of Law No. 1 can be summarily rejected in its entirety. *State v. Poindexter* (1988), 36 Ohio St.3d 1, 520 N.E.2d 568, at syllabus.

## II

### Independent Review

R.C. 2929.05(A) requires us to independently review the appropriateness of the death sentence. We must independently determine whether the aggravating circumstance outweighs the mitigating factors.

The evidence supports the single aggravating circumstance: that Franklin, as a principal offender, purposely killed Strauss during an aggravated burglary. R.C. 2929.04(A)(7).

Possible mitigating factors include Franklin's age, residual doubt, and lack of a serious prior criminal record. Nothing in the nature and circumstances of the offense appears to be mitigating.

Franklin's history, character and background offer some mitigating features. He was ill as a child, and therefore had difficulties in school. He came from a loving family that nurtured and supported him. He completed a Job Corps training program and worked for a time in a nursing home.

Franklin argued that he did not have a "significant history of prior criminal convictions and delinquency adjudications[,]" the lack of which is mitigating under R.C. 2929.04(B)(5).

Franklin was young, age twenty-one at the time of the offense. Franklin has not claimed that any of the other statutory factors, R.C. 2929.04(B)(1), (2), (3) or (6), are relevant, nor does the evidence at trial suggest that any of them are relevant. Nothing warrants significant weight as "other factors" under R.C. 2929.04(B)(7).

We find that the aggravating circumstance outweighs the mitigating factors beyond a reasonable doubt.

### III

### Proportionality

The final part of our analysis is to determine if the sentence of death is appropriate by comparing the sentence in this case to those cases where we have previously imposed the death penalty. We have undertaken such a comparison and find that a sentence of death in this case is neither excessive nor disproportionate.

Accordingly, the judgment of the court of appeals is affirmed.

*Judgment affirmed.*

MOYER, C.J., SWEENEY, HOLMES, DOUGLAS, WRIGHT and RESNICK, JJ., concur.