OPINION
Defendant-appellant, Janet L. Kortum, appeals her conviction in the Mason, Ohio Municipal Court for vehicular homicide.
Mason-Montgomery Road in Deerfield Township, Warren County, Ohio is a north/south four lane road, with two lanes in each direction. At its intersection with Irwin-Simpson Road, Mason-Montgomery Road widens for a center, left turn lane. This intersection is controlled by stoplights in all four directions. As of August 5, 1999, the stoplights did not include green arrows for left turns off of Mason-Montgomery Road. Rather, only general green lights were used.
At approximately 2:35 p.m. on August 5, 1999, Kortum was driving her minivan northbound on Mason-Montgomery Road with her daughter, Heather, as passenger. The light for the northbound traffic was red, so Kortum stopped in the center turn lane with her left turn signal activated. Daniel Simpson stopped behind Kortum, and Velma Raines stopped behind Simpson.
When the light turned green, Kortum moved into the intersection waiting for traffic to pass before she turned west onto Irwin-Simpson Road. Jeff Hummer was driving southbound on Mason-Montgomery Road in the curbside turn lane, preparing to make a westbound right turn onto Irwin-Simpson Road. He was followed directly by Paula Innis. Both Hummer and Innis came to complete stops because the light turned yellow as they approached the intersection.
Bobby Marshall, riding his motorcycle behind Innis, changed lanes, and proceeded southbound through the intersection in the innermost Mason-Montgomery Road lane. He was followed by Kelly Jackson, also traveling in the innermost southbound lane. At the same time, Kortum began to turn onto Irwin-Simpson Road, across Mason-Montgomery Road's southbound lanes. Marshall drove into the front wheel well of the minivan, throwing Marshall off of his motorcycle and over the minivan. He landed on the road next to Simpson and Raines' vehicles. Marshall's skull was fractured and his brain was bruised and lacerated.
Emergency personnel were called to the scene where they treated Marshall. He died from the head trauma suffered as a result of being thrown onto the roadway.
Trooper Paul Lezotte of the Ohio State Highway Patrol ("OSHP") arrived to investigate. He took statements from Kortum, Simpson, Raines, Hummer, Innis, and Jackson. The witnesses disputed whether the stoplight was green, yellow, or red when the accident occurred, and whether it was safe for Kortum to turn.
Kortum was charged with one count of vehicular homicide in violation of former R.C. 2903.07(A), a first-degree misdemeanor.[1] A jury trial was held. The state first presented Tpr. Lezotte as a witness. Tpr. Lezotte testified about his investigation. On cross-examination, he testified that the posted speed limit at the intersection was forty-five m.p.h., consistent with his accident report and with information that the State provided in discovery.
The State presented its eyewitnesses. Simpson testified that he could clearly see Marshall riding into the intersection. He stated that had he been in Kortum's position he would not have turned, because of how fast Marshall entered the intersection. Simpson testified that the light was green as Kortum began to turn. Raines' testimony was similar, although she was unsure whether the light was still green when the accident occurred because she was more focused on the accident. Jackson testified that at the time of the accident the light had turned yellow, but it may have been too late for Marshall to either see it or to stop.
At the close of the state's case, Kortum made a motion for acquittal which was denied. She then presented her defense with her own eyewitnesses. Innis and Hummer both testified that the light turned yellow as they approached the intersection, far enough in advance that they came to complete stops. Innis testified that after she stopped, she heard a "roaring" as Marshall pulled past her and into the intersection. Hummer saw Marshall enter the intersection. Both testified that it was clear that Kortum was preparing to turn, and they had been stopped for several seconds before Marshall passed them.
Kortum testified that she pulled into the intersection when the light turned green, but she did not attempt to turn until after it turned yellow. The southbound traffic appeared to be stopping, and she believed Marshall was stopping like the other traffic. Kortum's daughter, Heather, testified that other cars had either stopped or were slowing when her mother turned.
Court recessed, and trial resumed the following day. Before trial recommenced, the prosecutor informed the court and defense counsel that he was notified that morning by Tpr. Lezotte that the speed limit at the intersection was actually fifty-five m.p.h., not forty-five m.p.h. Defense counsel pointed out that Kortum's defense was based upon Marshall speeding through the intersection. This new information effectively discredited defense counsel who, in opening statements, made the claim that the evidence would show that the posted speed limit was forty-five m.p.h. It was pointed out that the parties prepared and presented their cases as if the speed limit was forty-five m.p.h.
Kortum motioned for a mistrial based upon unfair surprise. The trial court denied the motion, but observed, "I realize at this point they put you at a disadvantage." The prosecutor maintained that this had been an honest error.
Trial proceeded, and Kortum presented Ronald L. Huston, Ph.D., an accident reconstruction expert, who concluded that Marshall had entered the intersection at a speed excessive for the amount of traffic. The issue whether Marshall was actually speeding was effectively nullified by the state's new information. There was no further testimony relative to the speed limit. Huston concluded that the light was red when Marshall entered the intersection. The State presented Sergeant Timothy Tuttle of the OSHP, also an accident reconstruction expert, to rebut Huston's testimony.
The jury found Kortum guilty. She was sentenced to a suspended six-month jail term, one hundred twenty hours of community service, and restitution. Her driver's license was suspended for two years, with driving privileges granted for limited needs. Kortum appeals, raising four assignments of error.
Assignment of Error No. 1:
 THE TRIAL COURT DENIED MRS. KORTUM'S RIGHT TO A FAIR TRIAL WHEN IT OVERRULED HER MOTION FOR A MISTRIAL AND SUBSEQUENT MOTION FOR A NEW TRIAL, WHICH WERE BASED ON THE UNFAIR SURPRISE OF NEW EVIDENCE AND PROSECUTORIAL MISCONDUCT.
 Kortum contends that she was denied a fair trial when the State notified the court that the speed limit in the intersection was higher than previously disclosed. Kortum argues that her ability to present a defense was negated and her counsel's credibility was undermined.
Granting or denying a motion for mistrial is within the sound discretion of the trial court, and will not be disturbed on appeal absent a showing that the accused has suffered material prejudice.State v. Blankenship (1995), 102 Ohio App.3d 534, 549, appeal not allowed, 73 Ohio St.3d 1426, affirmed (1996), 74 Ohio St.3d 522. A mistrial should be granted only when a fair trial is no longer possible. State v. Franklin (1991), 62 Ohio St.3d 118, 127, certiorari denied (1992), 504 U.S. 960, 112 S.Ct. 2315, certiorari denied (1995), 516 U.S. 950, 116 S.Ct. 394. A mistrial should not be granted merely because some minor error or irregularity has arisen. Blankenship, 102 Ohio App.3d at 549.
Kortum was denied a fair trial when the prosecution changed an essential fact in the case. Beginning with Tpr. Lezotte's accident report, it was reported that the posted speed limit was forty-five m.p.h. This was the posted speed limit provided by the State in discovery. It was the speed limit initially used by both accident reconstruction experts. If Tpr. Lezotte or the prosecutor had any questions regarding the posted speed limit, they should have verified it prior to trial or discovery. Instead, this fact was checked only after Kortum had presented the majority of her defense.
This surprise discovery by Tpr. Lezotte and the State nullified Kortum's defense and undermined her counsel's credibility before the jury. It forced Kortum to request that no mention of the speed limit be made in the remaining part of the trial so as to not exacerbate this blow to her defense. In opening statements, Kortum's counsel had told the jury that they would prove that the speed limit was forty-five m.p.h. and that Marshall was speeding over that posted speed limit. Tpr Lezotte's testimony regarding the posted speed limit was in response to cross-examination. Thus, only the defense had presented testimony regarding this speed limit. And at the last moment, the State changed the essential facts of the case.
Once the trial court denied the mistrial, in an effort to alleviate the damage done, Kortum's counsel requested that the trial court not allow any further comment on the speed limit. To allow otherwise would make counsel look foolish, as if they did not know the essential fact underlying the defense. This unenviable position prevented the defense from asking its own expert for a conclusion whether Marshall was speeding and prevented cross-examination of the State's expert on this issue.
The damage done by this surprise development was noted by the trial court. But the trial court still refused a mistrial. Where the damage done is so recognized, it was error to then refuse a mistrial.
This is not a case where the defense made assumptions which the State proves incorrect at trial. Beginning with the initial investigation, it was reported that the posted speed limit was forty-five m.p.h. The last speed limit sign before the intersection showed forty-five m.p.h. The State believed this to be correct prior to trial and provided this fact in discovery. Under these circumstances, it was reasonable for defense counsel to base its case upon this presumed fact. Had discovery shown the posted speed limit to be otherwise, or had this fact been shown wrong prior to trial, or if the defense had assumed this fact without the State providing such unequivocal discovery, the result would be different.
The trial court erred by not granting a mistrial based upon the State's surprise revelation. The assignment of error is sustained.
Because of our resolution of the first assignment of error, the remaining assignments of error are moot.
Judgment reversed and remanded to the trial court for further proceedings according to law and consistent with this opinion.
POWELL, P.J., concurs.
WALSH, J., dissents.
[1] 1. Former R.C. 2903.07 was repealed by S.B. 107, effective March 23, 2000, with vehicular homicide now being prohibited by R.C. 2903.06(A)(3) and (B)(2).