OPINION *Page 2 
{¶ 1} Defendant-appellant Scott A. Boekhoff appeals his conviction in the Delaware County Court of Common Pleas. Plaintiff-appellee is the State of Ohio.
 STATEMENT OF THE FACTS AND CASE {¶ 2} The following facts give rise to the appeal: On September 4, 2007, officers from the Delaware Police Department responded to a domestic relations incident at a campground located at 257 London Road, Delaware, Ohio around 10:00 p.m. Upon arriving at the empty campground lot, the officers discovered Kimberly Scaggs dazed, intoxicated and bleeding from her head. The officers learned Scaggs had been assaulted. Appellant, who was living with Scaggs at the campsite, was a suspect in the assault. Appellant was not found at the campsite, and the officers searched the grounds. As a result, a warrant was issued for Appellant's arrest.
 {¶ 3} On September 4, 2007, the Delaware County Grand Jury indicted Appellant in case number 07 CRI 09 0503 on one count of felonious assault, in violation of R.C. 2903.11(A)(1), a felony of the third degree, and one count of domestic violence, in violation of R.C. 2919.25(A).
 {¶ 4} Following Scaggs release from the hospital, she contacted Appellant and they returned to Delaware. Corey Dean testified he heard Appellant make a threatening two way communication with Scaggs, "If you don't call off the dogs, then I'll make sure you don't breathe again."
 {¶ 5} Appellant was arrested on September 30, 2007, and arraigned on October 5, 2007. The trial court scheduled a jury trial for December 13, 2007, with bail set at $25,000.00 cash, surety, real estate or securities bond. *Page 3 
 {¶ 6} Scaggs visited the jail on numerous occasions and contacted Appellant via telephone at the jail, during which they discussed her testimony.
 {¶ 7} On December 7, 2007, the Delaware County Grand Jury indicted Appellant in case number 07 CRI 12 0693. Counts one and two of the indictment mirrored the charges in case number 07 CRI 09 0503, and added count three, intimidation of a witness in a criminal case, in violation of R.C. 2921.04(B), and count four, aggravated menacing, in violation of R.C. 2903.21(A). The state subsequently dismissed the charges in case number 07 CRI 09 0503.
 {¶ 8} Appellant was arraigned in case number 07 CRI 12 0693 on December 12, 2007. On December 12, 2007, Appellant moved the trial court to continue the December 13, 2007 jury trial. The trial court granted the request, and rescheduled the jury trial for February 19, 2008.
 {¶ 9} Appellant then filed a motion to dismiss counts one and two of the indictment based upon a speedy trial violation. The trial court denied the motion, via Judgment Entry of February 4, 2008.
 {¶ 10} Following the February 19, 2008 jury trial, Appellant was convicted on all counts, and sentenced to a total of five years in prison.
 {¶ 11} Appellant assigns as error:
 {¶ 12} "I. THE TRIAL COURT ERRED IN DENYING APPELLANT'S MOTION TO DISMISS COUNTS ONE AND TWO OF THE INDICTMENT AS THE SPEEDY TRIAL TIME PERIOD SET FORTH IN OHIO REVISED CODE § 2945.71 HAD EXPIRED. *Page 4 
 {¶ 13} "II. THE TRIAL COURT ERRED IN DENYING APPELLANT'S MOTION FOR A MISTRIAL BASED UPON THE STATE OF OHIO'S KNOWING FAILURE TO DISCLOSE DISCOVERABLE EVIDENCE MATERIAL TO HIS DEFENSE."
 I {¶ 14} In the first assignment of error, Appellant argues the trial court erred in denying his motion to dismiss counts one and two of the indictment based upon the violation of his right to a speedy trial. Specifically, Appellant argues he was not tried within the time period set forth in R.C. 2945.71.
 {¶ 15} Revised Code Section 2945.71 reads, in pertinent part:
 {¶ 16} "(C) A person against whom a charge of felony is pending:
 {¶ 17} "***
 {¶ 18} "(2) Shall be brought to trial within two hundred seventy days after the person's arrest.
 {¶ 19} "* * *
 {¶ 20} "(E) For purposes of computing time under divisions (A), (B), (C)(2), and (D) of this section, each day during which the accused is held in jail in lieu of bail on the pending charge shall be counted as three days. This division does not apply for purposes of computing time under division (C)(1) of this section."
 {¶ 21} Appellant argues a time period of 140 days expired from the date of his arrest on September 30, 2007 until his trial on February 19, 2008 while he was held in jail in lieu of bond. Appellant notes, pursuant to the calculation of the trial court, the speedy trial time relative to counts one and two of the indictment expired on December 17, 2007. *Page 5 
 {¶ 22} However, upon review of the record, Appellant moved the trial court on December 12, 2007 to continue the December 13, 2007 trial date. Appellant asserts he was forced to move for the continuance based upon the trial court's refusal to sever the new counts for trial, placing him in a position of choosing his right to due process or his speedy trial rights.
 {¶ 23} Section 2945.72 of the Revised Code provides the time a person is required to be brought to trial may be tolled for any period of time specified:
 {¶ 24} "The time within which an accused must be brought to trial, or, in the case of felony, to preliminary hearing and trial, may be extended only by the following:
 {¶ 25} "* * *
 {¶ 26} "(H) The period of any continuance granted on the accused's own motion, and the period of any reasonable continuance granted other than upon the accused's own motion;"
 {¶ 27} Pursuant to Section 2945.72, Appellant did not waive his right to a speedy trial; rather, the calculation of the same was tolled during the period of continuance granted upon his motion. Specifically, Appellant's speedy trial period tolled from December 17, 2007, the date the trial court granted his motion for a continuance, until February 19, 2008, the new trial date. Accordingly, Appellant was tried within the speedy trial period required.
 {¶ 28} While we recognize Appellant's difficult decision in either tolling the speedy trial time period or proceeding to trial on all four counts of the indictment; the decision did not result in the waiver of his right to a speedy trial. Rather, Appellant's own misconduct following his initial indictment resulted in his being indicted on the *Page 6 
additional charges. The trial court found the additional charges of witness intimidation and aggravated menacing were inextricably linked to the charges of domestic violence and felonious assault, such that a severance was not justified.
 {¶ 29} For the foregoing reason, the first assignment of error is overruled.
 II. {¶ 30} In the second assignment of error, Appellant argues the trial court erred in denying his motion for a mistrial based upon the State's failure to disclose discoverable evidence. Specifically, Appellant argues the trial court should have granted the motion for mistrial as the State failed to disclose it has possession of Appellant's cell phone during the investigation and prior to the start of trial; thereby, violating his right to due process and a fair trial.
 {¶ 31} As noted in the statement of the facts and case above, Appellant was indicted in counts three and four for intimidation of a witness and aggravated menacing. The acts charged Appellant made both telephone and direct connect calls to Scaggs. Telephone records were introduced regarding this issue. At trial, the State sought to introduce Appellant's cell phone into evidence during the direct examination of Officer Tom Donoghue. The trial court excluded the evidence. The following exchange occurred on record:
 {¶ 32} "Mr. Cornely: Your Honor, I'd like to inquire as to, the State, when they're going to let me know about this particular piece of evidence.
 {¶ 33} "The Court: What are you saying? That you didn't receive any evidence?
 {¶ 34} "Mr. Cornely: The police reports I have indicate that there — have no indication that there was a phone recovered. I've never been advised there was a *Page 7 
phone recovered. I believe that's probably my client's phone, which we have been looking for. I know the State has listened to every jail call. My client discusses frequently on there his concern about where his phone was, and I don't know where it is.
 {¶ 35} "The Court: So it was never disclosed to you that they had the defendant's cell phone?
 {¶ 36} "Mr. Cornely: No. * * *
 {¶ 37} "* * *
 {¶ 38} "The Court: You're objecting to that because you didn't receive it in discovery?
 {¶ 39} "Mr. Cornely: That's correct, Your Honor. I think it's particularly relevant in this case. The allegations, in part, that my client made a number of phone calls to Ms. Scaggs and how and where he made the phone calls was relevant. I spent quite a lot of time trying to figure out how and where he made the phone calls. I did spend time trying to locate his cell phone, inquiring of various individuals if they've seen it, Your Honor.
 {¶ 40} "I would have liked to have seen the cell phone before trial to go through the checked numbers to see who was called. It would also have helped me prepare to know that he could have made phone calls after the September whatever date because the police had it on the phone if they had it in their possession.
 {¶ 41} "Mr. Rohrer: First of all, he couldn't have made calls on this phone after September 30, Your Honor, because he was in jail. This phone was taken from the spot where he was arrested. He should have known that. He's on the jail calls. Quite *Page 8 
frankly, I didn't know this piece of evidence existed until yesterday. There was a follow-up done when he was arrested by Officer Deckling and — is it Whitaker?
 {¶ 42} "The Witness: Whittaker and Deckling.
 {¶ 43} "Mr. Rohrer: Officer Whittaker. They did a follow-up and they found this cell phone when they arrested Mr. Boekhoff. He talks about it on the jail calls, but he also insinuates that Cory Dean has it. What Mr. Cornely doesn't want to come into evidence here is that Mr. Boekhoff had this phone the entire time he was hiding from the police in this case.
 {¶ 44} "Mr. Cornely: Your Honor, I don't know where the phone was found. I've had no opportunity to inquire as to anybody where it was found.
 {¶ 45} "Mr. Rohrer: The phone was found up in woods, Your Honor, and it's on the tape. Mr. Boekhoff says where he had the phone last, when he was up in the woods where the cops found him where he was hiding out from them. And he says, "I had the phone up there, and I don't know what happened to it." He can hardly complain that he didn't have it until now.
 {¶ 46} "The Court: So what you're saying is that when the officers executed the warrant on Mr. Boekhoff —
 {¶ 47} "Mr. Rohrer: Correct.
 {¶ 48} "The Court: — they found the phone on him or —
 {¶ 49} "Mr.Rohrer: It wasn't on his person. It was — My understanding was it was laying on the ground.
 {¶ 50} "The Court: Near where he was apprehended?
 {¶ 51} "Mr. Rohrer: Correct. *Page 9 
 {¶ 52} "The Court: Okay.
 {¶ 53} "Mr. Rohrer: And just for the record, I didn't intend to bring the phone in as an exhibit. I didn't think it was going to be important in the case, but Mr. Boekhoff has made several statements on these jail calls about Cory Dean having his phone, et cetera. I think the jury is entitled to know that the police officers found it on him when he was arrested and Cory Dean didn't have it and has never had it. Once, again, another lie of Mr. Boekhoff. We provided all the phone records for —
 {¶ 54} "The Court: You're saying that you weren't aware that there was any phone; the law enforcement officers didn't provide that to you or any kind of —
 {¶ 55} "Mr. Rohrer: They did a follow-up but the —
 {¶ 56} "The Court: They didn't provide you the phone until yesterday?
 {¶ 57} "Mr. Rohrer: Correct. And I still haven't seen the follow-up, quite frankly.
 {¶ 58} "The Court: And even when you became aware of it yesterday, you didn't disclose that to Mr. Cornely?
 {¶ 59} "Mr. Rohrer: I didn't know that we actually — What happened was, during one of the witness' testimony — when Mr. Cornely was cross-examining about the phone, one of the witnesses, Patrolman Donoghue, whispered in my ear, "We have his phone."
 {¶ 60} "At that point, I told him to tell Officer Zoller to call down to Rita Mendel and have her pull it out of evidence, get it and bring it to court tomorrow morning.
 {¶ 61} "The Court: All right. Mr. Rohrer, tell me why you think it's admissible despite the fact that it wasn't disclosed yesterday. *Page 10 
 {¶ 62} "Mr. Rohrer: Your Honor, it's only being used to show that Mr. Boekhoff s — it's used to impeach, I guess, Mr. Boekhoff s own testimony on the tapes. And so if the Court wants to admit it with a limiting instruction only, I'm fine with that. I didn't really want it to be substantive evidence. But as to the phone calls, we provided the phone records to Mr. Cornely, all of them, the direct connect numbers, Mr. Boekhoff's 251 Nextel number and the 445 number. We know for a fact that the 445-1487 number was Kim Scaggs', albeit in Mr. Boekhoff's name.
 {¶ 63} "But we also provided him the records from this phone. Now, quite frankly, if you look at the record, there weren't any or many calls made from that phone during this time period. So the State's not insinuating there were calls made.
 {¶ 64} "The Court: So you provided Mr. Cornely the calls that were made from that phone right there?
 {¶ 65} "Mr. Rohrer: We provided him with all Sprint/Nextel records pertaining to Scott Boekhoff. There were two different —
 {¶ 66} "The Court: What's that cell phone number?
 {¶ 67} "Mr. Rohrer: I've not turned this phone on, Your Honor; so I don't know what the number of this phone is.
 {¶ 68} "Mr. Cornely: That's not the number that you provided. That phone has a different phone number.
 {¶ 69} "Mr. Boekhoff: That phone has been off.
 {¶ 70} "Mr. Rohrer: Then I — We subpoenaed, Your Honor, all Sprint/Nextel records pertaining to Mr. Boekhoff; and we got records for two different phone numbers. We provided those to Mr. Cornely. I can't tell the court what this phone's number is, *Page 11 
whether this phone was activated on the date. The only thing I can tell the court is this phone was found in the area where Mr. Boekhoff was located up around the railroad tracks behind the trailer park where his mom lives when he was arrested. And he says it on the jail tapes.
 {¶ 71} "Mr. Cornely: This — At this point, Your Honor, I'd like to ask for a mistrial because the State didn't give me what they're now claiming is now inculpatory evidence against my client.
 {¶ 72} "The Court: Inculpatory?
 {¶ 73} "Mr. Cornely: Well, Mr. Rohrer says that —
 {¶ 74} "The Court: Inculpatory or exculpatory?
 {¶ 75} "Mr. Cornely: I'm sorry. No, inculpatory. They're saying that it shows that he was lying on the jail calls, that he knew where the phone was and that they wanted to use it to impeach his credibility. Of course, he has to testify, but they still want to impeach his credibility. I think that's a Brady violation because I think it goes to impeachment evidence. I also think it's inculpatory.
 {¶ 76} "The Court: All right. Well, first of all, it wasn't disclosed so I'm not going to allow the admissibility of the phone. The question is whether there should be testimony regarding the phone — discovery of the phone at the time Mr. Boekhoff was arrested. If he were testifying obviously, it would be admissible for impeachment purposes. So the question is whether — the fact that he hasn't testified and there's been statements made on the case whether it can be brought in for so-called impeachment purposes to show that he was lying on the tape. *Page 12 
 {¶ 77} "Mr. Cornely: I'm not sure the tape is admissible yet, Your Honor, because it hasn't been authenticated.
 {¶ 78} "The Court: I understand that. And that's — We're going to have to deal with that at some point.
 {¶ 79} "Mr. Cornely: Further, I'd note, Your Honor, this officer has testified he's not the officer that was at the arrest. He was not at the arrest. Those officers have never been disclosed as potential witnesses.
 {¶ 80} "The Court: Well, yeah. So that would be hearsay also.
 {¶ 81} "All right. So I'll sustain your motion.
 {¶ 82} "Mr. Cornely: Thank you, Your Honor.
 {¶ 83} "The Court: That's not to say that evidence can't come in at a later time — at the appropriate time, but at least not at this point."
 {¶ 84} Tr. Vol. II at 66-74
 {¶ 85} Ohio Criminal Rule 16(E)(3) governs this situation, and reads:
 {¶ 86} "(E) Regulation of discovery
 {¶ 87} "***
 {¶ 88} "(3) Failure to comply. If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with this rule or with an order issued pursuant to this rule, the court may order such party to permit the discovery or inspection, grant a continuance, or prohibit the party from introducing in evidence the material not disclosed, or it may make such other order as it deems just under the circumstances." *Page 13 
 {¶ 89} A trial court has discretion to determine what sanction is appropriate when the State fails to disclose discoverable material.State v. Wiles (1991), 59 Ohio St.3d 71, 78, 571 N.E.2d 97; State v.Parson (1983), 6 Ohio St.3d 442, 445, 453 N.E.2d 689. Mistrials need to be declared only when the ends of justice so require and a fair trial is no longer possible. State v. Franklin (1991), 62 Ohio St.3d 118, 127,580 N.E.2d 1. The standard of review for evaluating a trial court's decision to grant or deny a mistrial is abuse of discretion.Sage, supra, at 182. In order to find an abuse of discretion, we must determine the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. Blakemore v.Blakemore (1983), 5 Ohio St.3d 217, 219, 450 N.E.2d 1140.
 {¶ 90} In Brady v. Maryland (1963), 373 U.S. 83, 83 S.Ct. 1194,10 L.Ed.2d 215, the United States Supreme Court held that the "[s]uppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." To establish a violation, a defendant must prove that the prosecution failed to disclose evidence upon request, the evidence was favorable to the defense, and the evidence was material.State v. Garn (Feb. 21, 2003), Richland App. No. 02CA45, citingMoore v. Illinois (1972), 408 U .S. 786, 92 S.Ct. 2562, 33 L.Ed.2d 706. There is no indication the evidence was favorable to the Appellant. As noted supra, Appellant's counsel repeatedly recognized the phone as inculpatory evidence. Further, defense counsel successfully objected to the phone being admitted into evidence. "[T]he test of Brady materiality is whether there exists a reasonable probability that the result would have been different had the evidence been disclosed to *Page 14 
the defense." State v. Franklin, Montgomery App. No. 19140, 2002-Ohio-6193, citing State v. LaMar (2002), 95 Ohio St.3d 181, 187,767 N.E.2d 166, 2002-Ohio-2128. A "reasonable probability" is a probability sufficient to undermine confidence in the outcome.United States v. Bagley (1985), 473 U.S. 667, 682, 105 S.Ct. 3375, 3383.
 {¶ 91} Upon review of the record, Appellant has not demonstrated the outcome of the trial would have been different had the evidence been disclosed by the State. The State introduced the telephone records and calls Appellant made from jail which would support a conviction on the charges. We find the trial court did not abuse its discretion in overruling Appellant's motion for a mistrial. The second assignment of error is overruled.
 {¶ 92} For the foregoing reasons, Appellant's conviction in the Delaware County Court of Common Pleas is affirmed.
 Hoffman, P.J., Gwin, J. and Wise, J., concur. *Page 15 
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, Appellant's conviction in the Delaware County Court of Common Pleas is affirmed. Costs assessed to Appellant. *Page 1