[Cite as *State v. Wilder*, 2012-Ohio-2288.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| COUNTY OF SUMMIT | )ss:<br>) | NINTH JUDICIAL DISTRICT |

| STATE OF OHIO | C.A. No. 26114 |
| Appellee | |
| v. | APPEAL FROM JUDGMENT<br>ENTERED IN THE |
| ANTHONY WILDER | COURT OF COMMON PLEAS<br>COUNTY OF SUMMIT, OHIO |
| Appellant | CASE No. CR 10 07 1878 |

DECISION AND JOURNAL ENTRY

Dated: May 23, 2012

DICKINSON, Judge.

INTRODUCTION

{¶1} A jury convicted Anthony Wilder of rape and sexual battery of his girlfriend's daughter. This Court affirms the judgment because the trial court exercised proper discretion in denying Mr. Wilder's motion for a mistrial because the testimony the jury heard was not so prejudicial that it deprived Mr. Wilder of a fair trial and, if the State violated the discovery rule, there was no indication in the record that it did so willfully.

BACKGROUND

{¶2} When she was five years old, L.T. moved with her mother and younger brother from Warren to Akron to live with her mother's boyfriend, Anthony Wilder. Although L.T.'s mother, Laura T., never married Mr. Wilder, they lived as husband and wife for more than a decade until L.T. told her mother that Mr. Wilder had been sexually molesting her. Within twenty-four hours of telling her mother, L.T. was living in Warren with her father.

{¶3} L.T. testified at trial that Mr. Wilder started touching her inappropriately when she was in the sixth grade and either 11 or 12 years old. She said that, on her thirteenth birthday, Mr. Wilder took her pants off and had sex with her. L.T. testified that the incidents would vary in frequency from every day to every week to less frequently for a while. According to her, Mr. Wilder would generally approach her while she was sleeping in her bedroom, the living room, or the basement of the house they shared in Akron. Just after her sixteenth birthday, in February 2010, L.T. told her boyfriend what Mr. Wilder was doing. Her boyfriend encouraged her to tell her mother. When her mother did not immediately force Mr. Wilder to move out of the house, L.T. went to live with her father and his family in Warren.

## MOTION FOR MISTRIAL

{¶4} Mr. Wilder's first assignment of error is that the trial court incorrectly denied his motion for a mistrial. He has argued that he was deprived of a fair trial because the jury heard inadmissible testimony that damaged the credibility of his "main" witness before she took the stand. The witness was L.T.'s mother, Laura T. On direct examination of L.T. on the first day of trial, the State asked her about the "custody situation" between her and her mother. Mr. Wilder objected and the trial court sustained the objection. The State then asked how often she sees her mother. Mr. Wilder did not object, and L.T. responded that she "do[esn't] really see her a whole lot." The State next asked whether her mother had "give[n] up custody" of her. After the trial court sustained Mr. Wilder's objection, L.T. answered, "Yes, she did." The State explained to L.T. that she was not permitted to answer a question after the judge sustains an objection to it. The trial court then said, "That will be stricken." The trial court did not further address the matter in front of the jury at that time.

{¶5}  Outside the presence of the jury, Mr. Wilder argued that the question about whether Laura T. had voluntarily relinquished her parental rights was "tremendously prejudicial" as it damaged her credibility and character days before she was scheduled to testify for Mr. Wilder.  The defendant moved for a mistrial, arguing that a limiting instruction would not cure the prejudice to him.  The State argued that the evidence was admissible and relevant to the credibility of both mother and daughter and showed the mother's bias against the alleged victim. The State also argued that the testimony was not prejudicial to Mr. Wilder because the testimony had nothing to do with him.  The trial court said that it agreed with the State and overruled the motion for mistrial.

{¶6}  On appeal, Mr. Wilder has argued that the trial court incorrectly denied his motion for a mistrial because the trial court did not do enough to overcome the prejudice against Mr. Wilder's main witness.  The State has countered that Mr. Wilder was not deprived of a fair trial because the court warned the jury about the effect of sustained objections during preliminary instructions and again during the final jury instructions.  During the preliminary instructions, the court told the jury that, if it sustains an objection, the jury "won't be able to hear the answer to the question that's being asked."  During the final instructions, the court told the jury that it must disregard any statements or answers that were stricken by the court because they are not evidence and "must be treated as though you never heard them."  The State has also argued that the jury would have found Mr. Wilder guilty beyond a reasonable doubt even if it had not heard that L.T. had voluntarily relinquished custody of her daughter.

{¶7}  "[I]n recognition of the fact that the trial judge is in the best position to determine whether the situation in [the] courtroom warrants the declaration of a mistrial," "the law grants great deference to the trial court's discretion in this area."  *State v. Plant*, 9th Dist. No. 2599,

1991 WL 81650 at *2 (May 15, 1991). According to the Ohio Supreme Court, "the law has invested Courts of justice with the authority to discharge a jury from giving any verdict, whenever, in their opinion, taking all the circumstances into consideration, there is a manifest necessity for the act, or the ends of public justice would otherwise be defeated. They are to exercise a sound discretion on the subject; and it is impossible to define all the circumstances, which would render it proper to interfere. To be sure, the power ought to be used with the greatest caution, under urgent circumstances, and for very plain and obvious causes." *State v. Widner*, 68 Ohio St. 2d 188, 190 (1981) (quoting *United States v. Perez*, 22 U.S. 579, 580 (1824)). "Mistrials need be declared only when the ends of justice so require and a fair trial is no longer possible." *State v. Franklin*, 62 Ohio St. 3d 118, 127 (1991) (citing *Illinois v. Somerville*, 410 U.S. 458, 462-63 (1973); *Arizona v. Washington*, 434 U.S. 497, 505-06 (1978)).

{¶8} On appeal, Mr. Wilder has not offered any argument about why the evidence regarding the custody situation was inadmissible. Assuming it was inadmissible, at least when offered through L.T.'s testimony, it was not so prejudicial that it deprived Mr. Wilder of a fair trial. The mother and both children testified, without objection, that they had lived together with Mr. Wilder in Akron for many years and that the living situation changed after L.T. reported the alleged abuse. They testified that, following this revelation, both children moved from Akron to Warren to live with their father. L.T. also testified, without objection, that she did not see her mother very often anymore. She said that she had attended school with the same kids for many years before moving to Warren for her junior year and she missed her former high school. She testified that, by the time of trial, she sees her mother "[j]ust whenever she comes down and picks up my cousin or comes to my aunt's house."

{¶9} That testimony, admitted without objection from the defense, effectively blunted the impact of the additional information that Laura T. had officially given up custody of her children in the wake of these allegations. Nothing in the record supports Mr. Wilder's contention that he was deprived of a fair trial because the jury heard L.T.'s response to the question about whether her mother had officially relinquished custody. The trial court exercised proper discretion by denying Mr. Wilder's motion for a mistrial. His first assignment of error is overruled.

## DISCOVERY VIOLATION

{¶10} Mr. Wilder's second assignment of error is that the State's "willful failure" to disclose evidence substantially prejudiced his defense. He has argued that his convictions should be reversed because the State violated Rule 16 of the Ohio Rules of Criminal Procedure by failing to timely uncover and disclose a series of angry text messages between the alleged victim and her mother. He has argued that, because the charges had been pending for over a year, the State should have uncovered and disclosed the texts before the trial began. On the second morning of trial, the prosecutor gave Mr. Wilder's lawyer three pages of text messages between L.T. and her mother. According to Mr. Wilder's lawyer, in some of those messages, Laura T. called her daughter a "slut" and "threatened her should she return [to Akron]." He argued that the texts damaged Laura T.'s credibility as a defense witness and that the delayed disclosure left him with insufficient time to prepare a strategy to rehabilitate her as a witness.

{¶11} The prosecutor explained to the trial court that he had first learned of the text messages on the first day of trial. Although he was aware of some "bad blood" between Laura T. and her daughter, he told the court that he had never heard that text messages existed that would prove that Laura T. was hostile toward her daughter after these allegations surfaced. The

prosecutor explained that L.T.'s younger brother, who at the time of the trial carried the cell phone that had once belonged to L.T., told him about the texts on the first day of trial. The prosecutor told the court that he had photocopies made the same day and gave those copies to the defense the next morning. Mr. Wilder's lawyer immediately moved to exclude the contents of the text messages from evidence due to the untimely disclosure by the State under Rule 16 of the Ohio Rules Criminal Procedure. Mr. Wilder argued that the texts were prejudicial, but did not argue that the prosecutor had possession of the texts or knowledge of their existence before the beginning of trial.

{¶12} The trial court heard Mr. Wilder's motion to exclude the texts from evidence and ruled that the State could not introduce the documents, but that it could ask Laura T. whether she had said such things to her daughter and could use the documents to impeach her if necessary. The State did not call Laura T. as a witness in its case in chief. Mr. Wilder called her as his sixth witness, on the afternoon of the third day of trial. On cross-examination, Laura T. testified that she "[n]ever" had any animosity toward her daughter after the allegations against Mr. Wilder came to light. She denied being angry with her daughter, saying that she felt "[c]onfused" and "[u]pset . . . [n]ot at her but with everything [that was] going on." She went on to testify that, during that time, her daughter was mad at her and said things to hurt her.

{¶13} On cross-examination, Laura T. testified that she called her daughter a "slut" in a text message and warned her that she might be harmed if she returned to Akron. She explained that she was not threatening her daughter, but warning her that Mr. Wilder's family was upset with her due to the allegations, so she would be wise to stay away from the area. Mr. Wilder has argued that the testimony about the text messages was inadmissible and prejudicial. Mr. Wilder has not explained his belief regarding what part of Criminal Rule 16 required the State to

disclose the text messages or what part of the rule required the State to uncover their existence before trial began.

{¶14} "Prosecutorial violations of [Criminal Rule] 16 are reversible only [if] there is a showing that (1) the prosecution's failure to disclose was a willful violation of the rule, (2) foreknowledge of the information would have benefited the accused in the preparation of his defense, and (3) the accused suffered some prejudicial effect." *State v. Joseph*, 73 Ohio St. 3d 450, 458 (1995). Under Rule 16(B)(3), upon written demand, the prosecution must provide a defendant with "all . . . papers [and] documents" that are related to the indictment, material to the preparation of a defense, or are intended for use by the prosecuting attorney as evidence at the trial. Presumably, Mr. Wilder intended to argue that the photocopies of the text messages were papers "material to the preparation of a defense."

{¶15} The first question presented by Mr. Wilder's second assignment of error is whether there was a violation of Criminal Rule 16. Assuming without deciding that the content of the text messages was subject to disclosure under Rule 16, it is unclear whether the prosecutor failed to disclose it. There is nothing in the record that suggests that the State knew about the text messages before the first day of trial. According to the prosecutor, he learned of the text messages on the first day of trial, made photocopies, and provided them to defense counsel "immediately" on the second morning of trial. There is no dispute that, before bringing in the jury on the morning of Wednesday, July 27, 2011, the second day of trial, the court heard Mr. Wilder's motion to exclude the text messages. Mr. Wilder has not argued, nor does the record suggest, that the prosecutor held the texts without disclosing them any longer than he described to the trial court. Furthermore, because Mr. Wilder's own witness, his long-time live-in

girlfriend, wrote the text messages, he presumably had an equal opportunity to discover their existence prior to trial.

{¶16} Even assuming without deciding that the State violated Criminal Rule 16 by failing to more quickly disclose the information, Mr. Wilder has not presented a basis for reversal of his convictions. In order to warrant reversal, Mr. Wilder must show that the State's failure to disclose was a willful violation of the rule. *State v. Joseph*, 73 Ohio St. 3d 450, 458 (1995). Mr. Wilder has not even argued, much less showed, that the State willfully violated Criminal Rule 16 in this case. Further, Mr. Wilder learned of the text messages more than a day and a half before Laura T. took the stand. It is unclear how his defense would have benefitted from earlier knowledge of the text messages. Mr. Wilder's second assignment of error is overruled.

## CONCLUSION

{¶17} Mr. Wilder's first assignment of error is overruled. The trial court exercised proper discretion in denying his motion for a mistrial because the testimony the jury heard was not so prejudicial that it deprived Mr. Wilder of a fair trial. The second assignment of error is overruled because, if the State violated Rule 16 of the Ohio Rules of Criminal Procedure, there is no indication in the record that it did so willfully. The judgment of the Summit County Common Pleas Court is affirmed.

Judgment affirmed.

––––––

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

CLAIR E. DICKINSON
FOR THE COURT

WHITMORE, P. J.
CARR, J.
CONCUR.

APPEARANCES:

THOMAS M. DICAUDO, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and HEAVEN DIMARTINO, Assistant Prosecuting Attorney, for Appellee.