[Cite as *State v. Jackson*, 2020-Ohio-1125.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

STATE OF OHIO

        Plaintiff-Appellee

-vs-

BRANDON MARCEL JACKSON

        Defendant-Appellant

JUDGES:
Hon. William B. Hoffman, P. J.
Hon. W. Scott Gwin, J.
Hon. John W. Wise, J.

Case No. 2019 CA 00049

O P I N I O N

| | |
|---|---|
| CHARACTER OF PROCEEDING: | Criminal Appeal from the Court of Common Pleas, Case No. 2018 CR 01835 |
| JUDGMENT: | Affirmed in Part, Reversed in Part and Remanded |
| DATE OF JUDGMENT ENTRY: | March 23, 2020 |

APPEARANCES:

For Plaintiff-Appellee

JOHN D. FERRERO
PROSECUTING ATTORNEY
RONALD MARK CALDWELL
ASSISTANT PROSECUTOR
110 Central Plaza South, Suite 510
Canton, Ohio 44702-1413

For Defendant-Appellant

RUSSELL S. BENSING
600 IMG Building
1360 East Ninth Street
Cleveland, Ohio 44114

*Wise, J.*

{¶1}  Defendant-Appellant Brandon Jackson appeals his convictions, in the Court of Common Pleas, Stark County, for sexual battery and gross sexual imposition. Appellee is the State of Ohio. The relevant facts leading to this appeal are as follows.

{¶2}  In March 2018, Elizabeth Myers, an intake worker for the Stark County Department of Job and Family Services, opened an investigative case regarding a four-year-old female, J.J., who was medically determined to be suffering from gonorrhea after she had been observed spraying a household cleaner on her vaginal area.

{¶3}  Myers initially met with J.J.'s parents, Appellant Jackson (father) and L.B. (mother), and sought information as to persons who recently had had access to the child. Once that information was obtained, Myers initiated a safety plan to have those persons tested for sexually transmitted diseases. Appellant became upset about the testing plan and eventually walked out of the meeting, uttering a few "choice words." Tr. at 61. Appellant nonetheless subsequently underwent testing, which showed that he was positive for gonorrhea, chlamydia, and trichomoniasis. In addition, L.B., the child's mother, tested positive for gonorrhea. Tr. at 59-66.

{¶4}  Also, as part of the efforts to assist the child, as further discussed *infra*, Megan Dahlheimer, a nurse practitioner at Akron's Children's Hospital, performed a medical examination on J.J. after observing a forensic interview. Tr. at 93. Furthermore, Carrie Schnirring, a psychology assistant at Lighthouse Family Center, performed another interview of J.J. Tr. at 131, *et seq.*

{¶5}  Furthermore, Detective James Lile of the Canton Police Department interviewed appellant at the Canton Police Department. The detective found out that appellant was in a relationship with J.J.'s mother, L.B., and had recently engaged in

sexual intercourse with L.B. Appellant also revealed that he had babysat J.J. and her sister multiple times, and that they had stayed with him during different nights. However, appellant denied doing anything "foul" with his daughters. Tr. at 171.

{¶6} On October 15, 2018, as a result of the above investigation concerning J.J., appellant was indicted by the Stark County Grand Jury on one count of sexual battery (R.C. 2907.03(A)(5)) and one count of gross sexual imposition (R.C. 2907.05(A)(4)). During pretrial proceedings, the State offered a plea agreement to appellant, including a proposal that in exchange for a guilty plea, the State would *inter alia* agree to move to dismiss the sexual battery count. Appellant declined the plea deal, and the case proceeded to a jury trial commencing on February 20, 2019. The State presented four witnesses: SCJFS Intake Specialist Myers, Nurse Dahlheimer, Psychology Assistant Schnirring, and CPD Detective Lile. Appellant took the stand as the sole defense witness. L.B., the child's mother, was called by the State as a rebuttal witness.

{¶7} After hearing the evidence and arguments, the jury found appellant guilty as charged. The trial court sentenced him to an aggregate prison term of eight years, merging the counts of sexual battery and gross sexual imposition. The court also classified appellant as a Tier III sex offender/child-victim offender. *See* Judgment Entry, March 6, 2019; Classification Entry, March 1, 2019.

{¶8} Appellant filed a notice of appeal on March 29, 2019. He herein raises the following three Assignments of Error:

{¶9} "I. THE TRIAL COURT ERRED IN ENTERING CONVICTIONS OF SEXUAL BATTERY AND GROSS SEXUAL IMPOSITION WHICH WERE NOT SUPPORTED BY SUFFICIENT EVIDENCE, IN VIOLATION OF DEFENDANT'S RIGHT

TO DUE PROCESS OF LAW, AS PROTECTED BY THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION.

{¶10} "II. THE TRIAL COURT ERRED IN ENTERING CONVICTIONS OF SEXUAL BATTERY AND GROSS SEXUAL IMPOSITION WHICH WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE, IN VIOLATION OF DEFENDANT'S RIGHT TO DUE PROCESS OF LAW, AS PROTECTED BY THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION.

{¶11} "III. THE TRIAL COURT ERRED IN DENYING DEFENDANT'S MOTION FOR MISTRIAL."

I.

{¶12} In his First Assignment of Error, appellant contends his sexual battery and gross sexual imposition convictions were not supported by sufficient evidence. We agree as to the first count.

### Standard of Review

{¶13} In reviewing a claim of insufficient evidence, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus.

### Sexual Battery Count

{¶14} R.C. 2907.03(A)(5) states as follows: "No person shall engage in sexual conduct with another, not the spouse of the offender, when *** [t]he offender is the other

person's natural or adoptive parent, or a stepparent, or guardian, custodian, or person in loco parentis of the other person."

**{¶15}** Furthermore, R.C. 2907.01(A) states as follows: "'Sexual conduct' means vaginal intercourse between a male and female; anal intercourse, fellatio, and cunnilingus between persons regardless of sex; and, without privilege to do so, the insertion, however slight, of any part of the body or any instrument, apparatus, or other object into the vaginal or anal opening of another. Penetration, however slight, is sufficient to complete vaginal or anal intercourse."

**{¶16}** In the case *sub judice*, appellant's arguments center on the sufficiency of the evidence shown going to the question of actual penile penetration of the child victim's vaginal opening for purposes of the sexual battery count. "Penetration of the vaginal cavity requires introduction of an object from without, which necessarily implies some forceful spreading of the labia majora. The penetration need only be 'slight.' R.C. 2907.01(A)." *State v. Farr*, 3rd Dist. Seneca No. 13–06–16, 2007–Ohio–3136, ¶ 17 (additional citations omitted).

**{¶17}** Appellant correctly observes that the young victim, J.J., did not testify at trial; her statements were admitted via hearsay exceptions based on her disclosures in forensic and medical interviews.

**{¶18}** The first witness called by the State was SCDJFS caseworker Elizabeth Myers. According to her testimony, the agency opened an investigation because "the only way for a child *** of four to have an STI is through some type of sexual contact." Tr. at 51. Myers recognized that there was a lack of quality of details from the forensic interview of J.J.: "They weren't very good due to her age, lack of language skills." Tr. at

58. However, Myers testified this was not uncommon for an alleged child victim under the age of five. *Id.*

**{¶19}** The State then called as its second witness Megan Dahlheimer, a nurse practitioner at Akron Children's Hospital. It has been recognized that "the subject of the communicability of venereal diseases is distinctly related to the science of medicine and beyond the ken of the average [layperson], and *** therefore, it is appropriate to require the party attempting to show transmission or non-transmission of the disease to produce expert medical testimony about the subject." *State v. Lucket*, 8th Dist. Cuyahoga Nos. 41666, 41667, 1980 WL 355169. In the case *sub judice*, appellant's trial counsel stipulated to Dahlheimer being recognized as an expert in pediatric nursing. Tr. at 88. However, on cross-examination by said counsel, Dahlheimer later conceded that she was "not an expert in STD's." Tr. at 111.

**{¶20}** Dahlheimer recalled that during her examination, she noticed a green discharge in J.J.'s diaper. Furthermore, '[t]here was a significant amount of yellowish-green discharge noted on [J.J.'s] vagina, more specifically in the labia." Tr. at 97. During Dahlheimer's interaction with the child, she asked her about the initial discharge. J.J. said she had seen it before on her diaper and on "daddy's belly." Tr. at 94. J.J. was asked to describe what a "belly" does, and the child stated that "you pee out of it." Tr. at 96. J.J. also reported that "daddy's belly" touched her body. *Id.* When asked to clarify what part of her body "daddy's belly" touched, J.J. "pointed to her genitals." *Id.*

**{¶21}** At trial, when asked by the prosecutor about how gonorrhea is spread, Dahlheimer answered: "Typically it's transmitted via sexual activity, sexual contact." Tr. at 100. She added that "*** depending on what part of the body is infected, with the

bacteria coming in contact with another mucus membrane of another person's body, that's how it's transmitted." *Id.* Furthermore, while possible, it would require a "perfect scenario" for gonorrhea to be transmitted via a toilet seat or a washcloth. Tr. at 104. A prepubescent girl's vagina would have a "very neutral or even alkalinic environment" which would not be conducive for the growth of bacteria. Tr. at 105.

{¶22} In regard to her physical examination of the child, Dahlheimer stated on cross-exam that she had found no bruises or lesions to the vulva labia, and further found no tears or scarring of the hymen. Tr. at 120. Dahlheimer also testified that a penis "doesn't have to be inserted' into a vagina, anus, or mouth in order to spread gonorrhea. Tr. at 115. But in any event, the examination itself revealed "no indication of penile insertion." Tr. at 121. However, on re-direct, Dahlheimer noted it is not abnormal to have no physical findings in instances of child sex abuse. Tr. at 123.

{¶23} The State's third witness was psychology assistant Carrie Schnirring. She recalled that J.J., age four, was functioning in the lower range of average, more like a two- to three-year-old. Tr. at 142, 144. At one point the child reported she had been touched by "Marcus" (her cousin's boyfriend), but then said her mother told her to say that, and then quickly said her mother did not do such a thing. Tr. at 144-145. J.J. additionally indicated to Schnirring that "Daddy" had touched her vaginal area, but in follow-up questioning "she was not able to provide any more details." Tr. at 147. J.J. also "didn't seem to have a good understanding of the difference between a truth and a lie." Tr. at 142. Schnirring summarized her evaluation as very difficult and limited. Tr. at 148-149.

**{¶24}** In assessing the medical and forensic interview testimony in the case *sub judice*, we note this Court has "long recognized that a review on appeal is generally limited to those materials in the record that were before the trial court." *State v. Crowell*, 5th Dist. Ashland No. 18 COA 018, 2018-Ohio-5226, ¶ 24 (additional citation omitted). Certainly, "[a]s trial courts often note, proof beyond a reasonable doubt does not mean proof beyond any doubt." *State v. Burgess,* 11th Dist. Lake No. 2002–L–019, 2004–Ohio–3338, ¶ 37. Nonetheless, it is well-established that the State bears the burden of establishing each and every element of a charged crime and must do so with proof beyond a reasonable doubt. *See In re L.R.*, 8th Dist. Cuyahoga No. 93356, 2010–Ohio–15, ¶ 11.

**{¶25}** Upon review of the record on appeal, we hold the State in this instance failed to demonstrate beyond a reasonable doubt that appellant engaged in sexual conduct with the child via insertion of his penis into her vagina. The State tried to rely on a theory at trial that there had to have been penile insertion or penetration in order for J.J. to acquire gonorrhea (*see* closing argument - Tr. at 257), but upon review we conclude that this theory was not sufficiently supported by the State's own witnesses for purposes of a valid sexual battery conviction under R.C. 2907.03(A)(5).

<u>Gross Sexual Imposition Count</u>

**{¶26}** R.C. 2907.05(A)(4) states in pertinent part: "No person shall have sexual contact with another, not the spouse of the offender *** when *** [t]he other person, or one of the other persons, is less than thirteen years of age, whether or not the offender knows the age of that person."

**{¶27}** "Sexual contact" means "any touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, pubic region, or, if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person." R.C. 2907.01(B).

**{¶28}** As indicated *supra*, J.J. reported that "daddy's belly" (her term for a penis) touched her body, specifically her genitals, which she communicated by pointing. Taken in conjunction with the additional testimony, including the investigatory work excising other potential perpetrators, we conclude rational jurors could have found the occurrence of gross sexual imposition, via "sexual contact," beyond a reasonable doubt.

## *Conclusion*

**{¶29}** Appellant's First Assignment of Error is therefore sustained in part and overruled in part.

## II.

**{¶30}** In his Second Assignment of Error, appellant contends his sexual battery and gross sexual imposition convictions were against the manifest weight of the evidence.

**{¶31}** We note appellant herein does not separately develop an extensive manifest weight argument at this point in his brief (*see* App.R. 16(A)(7)), but generally directs us to the arguments in his First Assignment of Error regarding the level of proof of penile insertion going to "sexual conduct." However, based on our conclusions under the First Assignment of Error, we need only address the gross sexual imposition count, which does not require the element of sexual conduct. Nonetheless, having reviewed the record, taking into account *inter alia* the utilization by the State of forensic interviews of

the child and considering appellant's own defense testimony, we are unable to conclude the jury in this case lost its way and created a manifest miscarriage of justice warranting reversal of appellant's conviction for gross sexual imposition.[1]

**{¶32}** Appellant's Second Assignment of Error is therefore overruled.

III.

**{¶33}** In his Third Assignment of Error, appellant argues the trial court erred in denying his motion for a mistrial. We disagree.

**{¶34}** Mistrials need to be declared only when the ends of justice so require and a fair trial is no longer possible. *State v. Swogger*, 5th Dist. Stark No. 2017CA00212, 2018-Ohio-3148, ¶ 43, quoting *State v. Franklin*, 62 Ohio St.3d 118, 127, 580 N.E.2d 1 (1991) (internal quotation marks omitted). Our standard of review for evaluating a trial court's decision to grant or deny a mistrial is abuse of discretion. *Swogger*, citing *State v. Maurer*, 15 Ohio St.3d 239, 269, 473 N.E.2d 768 (1984).

**{¶35}** Appellant concedes the record "is not entirely clear on what transpired" on this point. Appellant's Brief at 9. However, it appears undisputed that an unsubstantiated allegation from about two years prior that appellant had shown interest in selling his children for sex purposes was left unredacted in medical and/or child protective services records. *See* Sentencing Tr. at 14-16. This was not discovered until after the jury's verdict.

---

[1]   Appellant also urges that a manifest miscarriage of justice occurred via an unsubstantiated allegation, left unredacted in certain records provided to the jury, of his interest in selling his children into sex trafficking. We will address this issue in the Third Assignment of Error.

**{¶36}** While this appears to have been an inopportune oversight, we remain mindful that "[a] defendant is entitled to a fair trial but not a perfect one." *See State v. Bleigh*, 5th Dist. Delaware No. 09-CAA-03-0031, 2010-Ohio-1182, 2010 WL 1076253, ¶ 133, *quoting Bruton v. United States* (1968), 391 U.S. 123, 135, 88 S.Ct. 1620, 20 L.Ed.2d 476 (internal quotations omitted). Weighing the potential for prejudice to the defense case against the entirety of the evidence presented, we are unpersuaded that the decision by the trial court to deny appellant's request for a mistrial constituted an abuse of discretion.

**{¶37}** Appellant's Third Assignment of Error is therefore overruled.

**{¶38}** For the foregoing reasons, the judgment of the Court of Common Pleas, Stark County, Ohio, is hereby affirmed in part, reversed in part, and remanded for resentencing.

By: Wise, J.

Hoffman, P. J., and

Gwin, J., concur.

JWW/d 0227