[Cite as *State v. Owens*, 2025-Ohio-4386.]

COURT OF APPEALS
LICKING COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| STATE OF OHIO | Case No. 2025 CA 00016 |
| Plaintiff - Appellee | Opinion And Judgment Entry |
| -vs- | Appeal from the Court of Common Pleas, Case No. 2024 CR 00342 |
| CORY OWENS | Judgment: Affirmed |
| Defendant – Appellant | Date of Judgment Entry:  September 18, 2025 |

**BEFORE:** Craig R. Baldwin; Andrew J. King; Kevin W. Popham, Appellate Judges

**APPEARANCES:** KENNETH W. OSWALT, for Plaintiff-Appellee; KAITLYN A. O'HARA, for Defendant-Appellant.

*King, J.*

{¶ 1}   Defendant-Appellant Cory Owens appeals the March 18, 2025 judgment of conviction and sentence of the Licking County Court of Common Pleas. Plaintiff-Appellee is the State of Ohio. We affirm the trial court.

FACTS AND PROCEDURAL HISTORY

{¶ 2}   In January 2020, the Licking County Court of Common Pleas issued a civil protection order (CPO) pursuant to R.C. 3113.31 against Owens and listing D.C. as a protected party. Owens and D.C. have a child in common, J.C., who was also listed as a protected party.

{¶ 3}   On June 29, 2023, Owens pled guilty to violating the protection order.

{¶ 4} In April of 2024, D.C. began receiving calls and texts from a phone number she did not recognize. Suspicious, D.C took screen shots of her phone log. Later, texts appeared to confirm the person sending them was Owens because they asked how J.C. was doing, stated "I realy miss him," (sic), "I'm so sorry, I shouldn't have contacted you. I've been in my feelings and miss my son," and stated "I have a right to know how my son is doing." State's exhibit 5.

{¶ 5} D.C. reported the matter to the Licking County Sherriff's Office and provided the suspect phone number. Detectives Clark and Burgess worked on the report. On April 15, 2024, Burgess used Clark's phone to text the suspect number simply saying "hey." Fifteen days later, Clark received a reply. He asked who was texting and received a reply "you messaged me hey." Clark messaged back, identified himself, stated he was receiving the message on his work phone and was not sure what he texted the suspect number for. Clark received a reply "sorry I had missed a text from you on 4/15 saying hey, that is all, it's cory." Clark replied "Humm Owens? I think Detective Burgess messaged you from my phone." "Cory" then stated "I'm sorry, wrong person" and "my apologies, wrong number. I thought that you was somebody else." Transcript of trial, January 30, 2025 (T.) 42-46.

{¶ 6} The same day, Detective Burgess and Detective Riddles made contact with Owens at Owens' home. Owens stated he knew why Burgess was there as he had heard D.C. was making allegations against him. Owens initially stated he had only one phone, the one on his person, but later admitted he had many. Owens gave Burgess permission to enter his home, where Burgess located four phones. Owens gave him permission to examine the phones. While at the home, Burgess called the suspect number twice. When

he did, the phone still in Owens' possession chimed. This was captured on Burgess' body camera. State's exhibits 9, 10, and 11; T. 71-80.

{¶ 7}   Based on this information, Owens was charged with violating a protection order in violation of R.C. 2919.27(A)(1), a felony of the fifth degree due to Owens' prior conviction for violating a protection order.

{¶ 8}   Owens pled not guilty to the charge and elected to proceed to a trial to the court. The state presented the above outlined facts and exhibits and Owens rested without presenting evidence. The trial court found Owens guilty as charged and sentenced Owens to two years of community control.

{¶ 9}   Owens timely filed an appeal and the matter is now before this court for consideration. He raises two assignments of error as follow:

I

{¶ 10} "THE STATE'S EVIDENCE THAT OWENS CONTACTED THE PROTECTED PARTY D.C. WAS LEGALLY INSUFFICIENT AS A MATTER OF LAW."

II

{¶ 11} "BECAUSE THE EVIDENCE WEIGHED MANIFESTLY AGAINST CONVICTING OWENS OF VIOLATING A PROTECTION ORDER HIS CONVICTION SHOULD BE REVERSED."

{¶ 12} We address Owens' assignments of error together. In his first and second assignments of error, Owens argues his conviction for violating a protection order is not supported by sufficient evidence and is against the manifest weight of the evidence. We disagree.

Applicable Law

{¶ 13} A review of the sufficiency of the evidence and a review of the manifest weight of the evidence are separate and legally distinct determinations. *State v. Thompkins*, 78 Ohio St.3d 380, 387(1997) "While the test for sufficiency requires a determination of whether the State has met its burden of production at trial, a manifest weight challenges questions whether the State has met its burden of persuasion." *Id*. at 390.

{¶ 14} On review for sufficiency, a reviewing court is to examine the evidence at trial to determine whether such evidence, if believed, would support a conviction. *State v. Jenks*, 61 Ohio St.3d 259 (1991). "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Jenks* at paragraph two of the syllabus, following *Jackson v. Virginia*, 443 U.S. 307 (1979). On review for manifest weight, a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine "whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983). See also, *State v. Thompkins*, 78 Ohio St.3d 380 (1997). The granting of a new trial "should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." *Martin* at 175.

{¶ 15} Owens was convicted of one count of violating a protection order pursuant to R.C. 2919.29(A)(1) which states no person shall recklessly violate the terms of a

protection order issued or consent agreement approved pursuant to section 2919.26 or 3113.31 of the Revised Code.

## The Evidence

{¶ 16} The parties do not dispute that there was a protection order in place and that under the terms of that protection order Owens was prohibited from initiating contact with D.C. including through "cellular or digital telephone; text; instant messaging . . ." State's Exhibit 1 at 3. Owens argues that there was no evidence directly linking him to the suspect phone number sending the texts.

{¶ 17} As noted in our statement of facts, however, the texts to D.C. asked about "my son," having "a right to know how my son is doing," and stated the person initiating the texts was aware they "shouldn't have contacted" D.C. In asking about "his son" Owens referred to J.C. by name. State's Exhibit 5. When Owens answered a text from detectives, he identified himself as "Cory." Additionally, when Detective Burgess met with Owens at his home and called the suspect number twice while at the home, Owen's phone chimed both times. State's exhibits 9, 10, and 11; T. 45, 71-80; State's Exhibits 9 and 10.

{¶ 18} While this evidence may have been circumstantial, it is axiomatic that circumstantial evidence has the same probative value as direct evidence. Moreover, "[a] conviction can be sustained based on circumstantial evidence alone." *State v. Franklin*, 62 Ohio St.3d 118 (1991).

{¶ 19} We conclude that this is not an exceptional case in which the evidence weighs heavily against the conviction. Upon review of the record we cannot say that the trial court as the trier of fact lost its way and created a manifest miscarriage of justice in finding Owens guilty of violating a protection order. While circumstantial, the testimony

and record contain ample evidence of Owens' responsibility for the crime. Owens' assignments of error are therefore overruled, and the judgment of the Licking County Court of Common Pleas is affirmed.

{¶ 20} For the reasons stated in our accompanying Opinion, the judgment of the Licking County Court of Common Pleas is affirmed.

{¶ 21} Costs to Appellant.


By: King, J.

Baldwin, P.J. and

Popham, J. concur.