**[Cite as *State v. Lee-Robinson*, 2025-Ohio-4951.]**

# COURT OF APPEALS OF OHIO

# EIGHTH APPELLATE DISTRICT
# COUNTY OF CUYAHOGA

STATE OF OHIO,                                     :

    Plaintiff-Appellee,            :

                                 No. 114783

    v.                                              :

TRESHAUN LEE-ROBINSON,                  :

    Defendant-Appellant.        :

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** October 30, 2025

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-24-694746-A

---

## *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Matthew W. Moretto, Assistant Prosecuting Attorney, *for appellee.*

Charles Ruiz-Bueno Co., L.P.A., and J. Charles Ruiz-Bueno, *for appellant.*

KATHLEEN ANN KEOUGH, J.:

{¶ 1} Defendant-appellant Treshaun Lee Robinson ("Robinson") brings this appeal challenging his convictions for receiving stolen property, two counts of forgery, and theft from a person in a protected class.[1] We affirm.

## I. Procedural History

{¶ 2} Robinson and a codefendant were named in an indictment stemming from offenses occurring between July 10, 2023, through August 9, 2023. Robinson was charged with receiving stolen property; two counts of forgery, each furthermore specifying that the victim was an elderly or disabled adult and the value of the loss to the victim is $1,000 or more and less than $7,500; and theft from a person in a protected class that furthermore specified that the victim was elderly and the value of the loss to the victim is $1,000 or more and less than $7,500.

{¶ 3} The matter proceeded to a bench trial, a Crim.R. 29 motion was made at the close of the State's case, and Robinson was ultimately found guilty of all counts in the indictment as charged. Robinson was sentenced that same day to one year of community-control sanctions and ordered to pay restitution to the bank that reimbursed the victim for his loss. His appeal alleges a single assignment of error for our consideration:

> The evidence adduced at trial was insufficient to sustain a verdict against defendant-appellant.

---

[1] At trial, Robinson clarified that there is not a hyphen between "Lee" and "Robinson" as reflected in the indictment and thus reflected in the caption of this matter.

## II. Factual History

{¶ 4} Robert ("the victim"), who resides in Rochester, New York, testified that he and his brother handle finances, i.e., "paying all the bills . . . reconcile checking and savings accounts" for his 93-year-old mother, who resides in Brecksville, Ohio. (Tr. 17.) At the time of the forgery, the victim was a co-owner of the account. In August 2023, the victim discovered that there was a discrepancy related to one of the checks he had written on behalf of his mother. Specifically, the victim testified that in July, he wrote a check to State Farm for $27.41 that had cleared in the amount of $2,300.44 and that the payee had been altered to read "Treshaun Lee Robinson."

{¶ 5} The images of the front and back of the check were introduced as evidence, and the victim testified that "the date, the payee[,] and the amount have been altered [but that] is my signature and my memo for the [insurance policy] number." (Tr. 18.) The victim testified that a second check in this batch of checks appeared to be altered as well. Both checks were filled out by the victim in July and put in a mailbox located at the post office in Broadview Heights, Ohio. Upon his discovery of the altered checks, he filed a police report with the Brecksville police department.

{¶ 6} Brian Scabbo ("Det. Scabbo"), a detective at the Brecksville police department, testified that he had been assigned this matter. He testified that he subpoenaed the institutions where each check had been negotiated and that the check at issue in this matter was negotiated through Dollar Bank. Det. Scabbo noted

that the fraudulent check bore the same name — Treshaun Lee Robinson — as the signer on the Dollar Bank account where the check had been negotiated. The account was virtually unused until the altered check was deposited and its contents were distributed into a CashApp account, a peer-to-peer payment service, bearing the username "Treshau."

{¶ 7} On cross-examination, Det. Scabbo acknowledged that the signatures on the account signature card, the back of the altered check, and Robinson's driver's license application appear different from each other, though on recross-examination Det. Scabbo opined that two of the three signatures were similar, and acknowledged that signatures done on an electronic pad differ from those made with a pen on paper. Cross-examination also uncovered that Det. Scabbo had not subpoenaed CashApp. Det. Scabbo admitted that he was unable to find a connection between Robinson and the codefendant and between Robinson and the Broadview Heights Post Office where the checks had been mailed at the same time.

{¶ 8} Robinson testified in his own defense. He stated that he was recently laid off from a job at Cleveland-Hopkins International Airport and that he does not have any criminal history aside from traffic offenses. He agreed that he has a personal account with Dollar Bank and stated that he opened an account at Dollar Bank under the name of his business of which he is the sole member and operator, Tregotit, LLC. He testified that he registered this entity with the Secretary of State in 2020 and he planned to "open up an entertainment business." (Tr. 69.) Robinson testified that he did not use the account from November 2022 through August 2023.

He stated that he was unaware of the alleged activity in his account until after he was arrested in this matter. Robinson denied having any connection to the victim, the codefendant, and Broadview Heights generally. When shown the altered check and the signature on the back, Robinson denied that any of the handwriting was his own. He also introduced his passport as an exhibit to show that the signature also differed from that on the altered check, but admitted that the signature on his passport differed from his signature on his driver's license application. Robinson also noted that the signature on the altered check had a circle or loop where the "T" was crossed and noted that this loop is not present on any of the other documents. On cross-examination, Robinson admitted that he did not contact the police to report the unauthorized use of his bank account, but clarified that this was only because he did not know about the activity until after he was arrested.

### III. Law and Analysis

{¶ 9} A challenge to the sufficiency of the evidence requires this court to determine whether the State met its burden of production at trial and whether the evidence, if credible, would sustain a conviction. *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). A sufficiency challenge inquires as to whether, after the viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St.3d 259 (1991).

{¶ 10} On appeal, Robinson generally contests his identity, i.e., that he was not the individual who actually did the actions resulting in these convictions. He

argues that the evidence presented was insufficient to prove that he was responsible for intercepting the check, altering it, depositing it into his bank account, and then transferring the deposit to a CashApp account bearing the username, "Treshau." He also contends that to convict him, the trial court must have improperly stacked inferences, which is impermissible.

{¶ 11} The rule barring factfinders from stacking inferences is extremely limited and only applies to inferences that are drawn exclusively from other inferences. *State v. Maynard*, 2012-Ohio-2946, ¶ 27 (10th Dist.). However, a trier of fact may rely on both direct and circumstantial evidence in evaluating a defendant's guilt because both types of evidence carry the same weight and possess the same probative value. *State v. Lash*, 2017-Ohio-4065, ¶ 31 (8th Dist.). A conviction may be sustained based on circumstantial evidence alone. *State v. Franklin*, 62 Ohio St.3d 118, 124 (1991).

{¶ 12} We disagree with Robinson's arguments. After a thorough review of the record, we find that the State presented sufficient evidence upon which any rational trier of fact could have found the essential elements suggesting that Robinson was the individual who intercepted the check, altered it, deposited it, and withdrew the funds in a CashApp account with a username that coincides with the first seven letters of his name. Evidence was presented that (1) the check cleared in a Dollar Bank account that belonged to Robinson's LLC, of which he is the only member; (2) the check was signed "Treshaun Robinson"; (3) the funds were transferred to a CashApp account bearing the username, "Treshau" (4) the Dollar

Bank records included a copy of Robinson's driver's license, and (5) in court, Det. Scabbo identified Robinson as the individual pictured in the driver's license. Robinson admitted that he owned and controlled the bank account where the check had been negotiated but denied having a CashApp account at all, despite the username of the account being "Treshau."

{¶ 13} Moreover, the extensive signature analysis and comparisons that were made at trial indicate that in viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have determined that the signatures were all made by the same individual. The trial court commented that its own comparison of the signatures indicated that they were similar and made by the same individual. During sentencing, the court explained: "I do see similarities: in particular the small loop at the bottom of the 'T,' the kind of curved 'T' at the top, it clearly looks to me that it is substantially just like the one that [Robinson] admits is his signature." (Tr. 111.)

{¶ 14} All of this evidence taken together, construed as true, and viewed in the light most favorable to the prosecution provide sufficient circumstantial and direct evidence of Robinson's guilt. We do not find that the trial court relied upon any impermissible inference stacking in reaching its verdict, nor is the evidence discussed insufficient to sustain a conviction because it fails to demonstrate that Robinson had done the acts of which he was accused. Accordingly, we overrule Robinson's sole assignment of error.

{¶ 15} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

---

KATHLEEN ANN KEOUGH, JUDGE

MARY J. BOYLE, J., CONCURS;
EMANUELLA D. GROVES, P.J., DISSENTS (WITH SEPARATE OPINION)

EMANUELLA D. GROVES, P.J., DISSENTING:

{¶ 16} I respectfully dissent from the majority opinion. I do not believe the State met its burden of production because there was insufficient evidence to support the convictions. I am particularly concerned because this decision will lead to the conviction of wholly innocent persons who are themselves the victims of fraud. Had the State introduced identification evidence that established Robinson was the only person who could have deposited funds into the account or that the CashApp account used to withdraw the funds was tied to an IP address owned by Robinson, I would be far more comfortable with the majority's result. Because the State did not, I cannot agree with the majority's resolution of this case.

{¶ 17} It is well settled that "merely establishing that the defendant's name is the same as that of the alleged offender is insufficient to prove identity." *State v.*

*Bailey*, 2017-Ohio-2679, ¶ 18 (2d Dist.), citing *State v. Gray*, 2010-Ohio-2530, ¶ 7 (7th Dist.), citing *State v. Marcum*, 2004-Ohio-3036, ¶ 23 (7th Dist.); *State v. O'Neil*, 107 Ohio App.3d 557 (6th Dist. 1995). "There must be a 'significant correspondence of identifying characteristics' between the defendant and the person with the same name who is implicated in an offense." *Id.*, quoting *State v. Wilson*, 1997 Ohio App. LEXIS 4740 (2d Dist. Oct. 24, 1997).

{¶ 18} Regarding the deposit itself, the evidence established that the altered check was deposited into Robinson's account via a mobile application. There was no evidence presented that established that Robinson was the sole person capable of depositing the check. The detective acknowledged that he did not know what application was used to deposit the check. Further, no one from the bank testified regarding mobile check deposits or provided any information regarding methods a person could use to deposit a check into an account. Additionally, there was no evidence presented that Robinson deposited the check. It is a reasonable inference that the perpetrator altered the check in order to deposit it into Robinson's account; however, we cannot infer that Robinson is the person who deposited and altered the check. Furthermore, the withdrawal of the funds from Robinson's account were committed almost immediately after the deposit. So quickly that there is no evidence that Robinson was aware of the deposit and withdrawal. Moreover, the detective did not subpoena CashApp for their records or attempt to determine the IP addresses of the devices used to deposit and/or withdraw funds from the account.

The fact that Robinson's name and account were used to commit this crime suggests he is a suspect. However, the law requires more than a suggestion to find guilt

{¶ 19} Based on my review, the evidence presented by the State was insufficient to establish Robinson perpetrated the crimes charged. Robinson opened the business account a few years before the transaction in question and the detective only requested two months of records, which established the account had very little activity during that time. More records might have provided further context; however, the records provided suggest Robinson did not use the account frequently and might not have noticed a quick deposit and withdrawal. Additionally, Robinson did not know Robert nor his family, had no connection to the post office where the checks were mailed, and there was no evidence he received or altered the check. The majority relies on the testimony regarding Robinson's signature and the trial court's observations; however, at best this established similarities between Robinson's known signature and the signature on the forged check. Given the lack of any other evidence establishing Robinson deposited and/or withdrew the check, I would find that the similarities are insufficient to establish Robinson's identity. *See Mentor v. Riskin,* 1999 Ohio App. LEXIS 5758 (11th Dist. Dec. 3, 1999.)

{¶ 20} This type of crime seems to be on the rise, though I did not find many similar cases in Ohio. However, the cases that have addressed comparable situations include evidence that the defendant in some way took ownership or action regarding the funds deposited in their account.

{¶ 21} In a strikingly similar case, *State v. Dorsey*, 2025-Ohio-2977 (9th Dist.), the two victims mailed checks to separate entities. Those checks were stolen, and the checks were altered to list Dorsey as the payee and deposited into Dorsey's bank account. The court of appeals found that sufficient evidence supported Dorsey's convictions for grand theft, forgery, and receiving stolen property, where the State established that the checks were deposited in person into Dorsey's account at two different branches of her bank and there was no attempt to immediately withdraw the funds. *Id.* at ¶ 9. Additionally, the evidence established that after the first check was deposited it was declared fraudulent and the funds removed. The account ran a negative balance until the second check was deposited, after which a series of purchases followed. *Id.* at ¶ 13. *See also In Commonwealth v. Jones*, 219 A.3d 205 (Pa. Super. Ct. 2019)[2] (finding sufficient evidence supported convictions for forgery where the defendant opened the account with an initial deposit of $25, attempted to deposit a suspicious check by mobile deposit for over $900, immediately attempted to withdraw funds at a different bank branch, and when that failed, attempted to withdraw funds again at the original bank branch); *Peters v. State*, 2020 Tex.App. LEXIS 1676 (Tex. App. Feb. 26, 2020) (Sufficient evidence established defendant's guilt where he opened an account with an initial deposit of $25, mobile deposited a series of $150 checks, where bank employees testified that

---

[2] PA. Superior Court I.O.P. 65.37 designated this a nonprecedential decision, though the rule allows citation for persuasive purposes only.

defendant owned the account and that the mobile deposits could not have been accidental, and there was no report of fraudulent activity regarding the account).

{¶ 22} Data breaches have become so common that they are almost unremarkable. We are constantly warned that our information is unsafe and can be used for nefarious purposes. A large part of this crime was conducted electronically. The use of Robinson's name and account point a finger directly at him, but I would find, especially in this type of case, that the use of his name was insufficient as a matter of law to establish guilt. The evidence of how the check was deposited and how it was withdrawn is too speculative. The State's evidence relies on Robinson's name and account to leap to the conclusion that he was the perpetrator. It is reasonable to infer that someone with knowledge of Robinson's existence and his account used his name to deposit the funds and created a CashApp account using a portion of Robinson's name to withdraw those funds. However, I would find it is impermissible to stack the inferences to find that Robinson was the person who committed these acts.

{¶ 23} Accordingly, I would sustain the assignment of error.